# Richmond

GEORGE RAISOVICH v. EDWIN C. GIDDINGS, INFANT.

January 14, 1974.

Record No. 8271.

Present, All the Justices.

*Myron C. Smith* (*Fitzgerald & Smith*, on brief), for plaintiff in error.

*Paul F. Sheridan* (*Joseph Dyer; Siciliano, Daly, Ellis, Sheridan & Dyer*, on brief), for defendant in error.

HARRISON, J., delivered the opinion of the court.

George Raisovich, also referred to as plaintiff, petitions that a $14,-500 verdict of a jury recovered by him be set aside on the grounds that it is inadequate and rendered under a misconception of the facts.

On Saturday, April 13, 1968, Raisovich and Edwin C. Giddings were involved in an automobile accident in which Raisovich's vehicle was struck from the rear by a vehicle operated by Giddings. The

negligence of Giddings is not in dispute. We are concerned only with the question of damages.

A police officer testified that at the time of the accident plaintiff said "he didn't feel that he was injured". A photograph showed only slight damage to the rear of plaintiff's car. Mrs. Raisovich, six months pregnant and riding with her husband, was not injured. Plaintiff drove his car home from the scene of the accident.

Raisovich testified that at the moment of impact he felt something tear in the middle of his back and that "[i]t kind of made [him] sick on [his] stomach". Plaintiff told the police officer that he did not want an ambulance, and the officer recorded no injuries involved on his official report. Raisovich said that by the time he reached his home in Alexandria his back was hurting and he went to bed; that his back continued to hurt on Sunday; and that on Monday he made an appointment with Dr. Theodore Tamariz whom he saw on Tuesday. Dr. Tamariz described the injury as a "typical cervical-dorsal strain, whiplash they call it". He said that plaintiff had "muscle spasm and limitation of motion in trying to move the neck in every direction". The doctor prescribed muscle relaxants, pain medication and physio-therapy. He said that after one week of these treatments plaintiff came back and "was much improved".

Dr. Tamariz did not again see Raisovich until March 21, 1969 when plaintiff reappeared "complaining again of pain over the dorsal spine". When he did not respond to treatment Dr. Tamariz referred him to Dr. Ernesto V. Castro, a neurosurgeon.

It suffices to say that from March, 1969 until October, 1971 plaintiff was undergoing medical treatment which necessitated periodic confinements in three different hospitals, the performance on him of three myelograms and treatment by several neurosurgeons and an orthopaedic surgeon. At one time it was diagnosed that plaintiff had a disc herniation in the dorsal region. A dorsal laminectomy was performed, and no disc herniation was found. Instead the operation disclosed large epidural veins around the nerve roots on plaintiff's left side. Later a laminectomy in plaintiff's lumbar spine was performed and a protruding disc was removed.

The attending physicians relate Raisovich's condition to the injury he received in the accident with Giddings. By August 13, 1971 Dr. James H. Masterson, an orthopaedic surgeon, felt that Raisovich could probably return to light work if such were available. He further testified that his prognosis for Raisovich's future "is relatively good. He

will not have guarantee that he will not have further trouble, but then, none of us have that".

Plaintiff testified that he was absent from work 75 days between April 24, 1969 and October 10, 1969 and the entire period beginning June 29, 1970 through October 1, 1971. He said that he lost wages amounting to $13,148.50 and that his medical expenses aggregated $6,496.33, making a total out-of-pocket loss of $19,644.83.

At the request of the defense Raisovich was examined on December 7, 1971 by Dr. Otto A. Engh, an orthopaedic surgeon. Dr. Engh questioned the relationship of the large epidural veins and the automobile accident of April 13, 1968. He said that "[l]arge epidural veins in that area would be extremely unusual. It is not usually related to trauma. . . . Usually it is a congenital abnormality. They sometimes increase as a person gets older". He found evidence of arthritis in plaintiff's back and said that "it is of a long duration" and predated April 13, 1968. He also said that the fusion and the laminectomy in the lumbar spine of plaintiff had a successful result. When asked to what he attributed plaintiff's complaints and symptoms in the mid-back, Dr. Engh replied: "I would say that the plaintiff's complaints are related to an arthritis that he has in the low back. I can't state that having a disc removed may not be a factor." When asked to what extent he attributed plaintiff's present complaint to the automobile accident of 1968 as opposed to the arthritis, the doctor replied: "I would feel the arthritis is his problem."

At the conclusion of the evidence, and during the course of its deliberation, the jury inquired in writing as to how much of the expenses claimed by plaintiff were paid by insurance; whether plaintiff collected unemployment compensation during his periods of idleness and if so the amount; and asked for the amount of out-of-pocket expenses plaintiff suffered. Without objection or exception the trial judge responded in writing as follows: "These questions are not before you and cannot be answered and are not to be speculated upon. Your verdict must be based upon the evidence." After further deliberation the jury returned a verdict in favor of the plaintiff in the amount of $14,500. Plaintiff does not contend that the jury was influenced by prejudice, passion or corruption but rather that the jurors were "under a misconception of the facts" in that they felt they could consider any insurance or collateral benefits which Raisovich had available and which could be set off against any sums he might be entitled to as a result of defendant's negligence.

We cannot hold as a matter of law that the jury labored under such "a misconception of facts". To do so we would have to assume that the jury deliberately ignored the instructions and admonition of the court. The transcript shows only a casual reference to insurance and this was by the plaintiff or his witness or through his exhibits. Raisovich stated that he was unable to work from July, 1970 until October, 1971, and, referring to doctors, said "they filed the forms where I got the sick benefits, where I was eligible for them". Mrs. Raisovich testified that she went back to work in November, 1970 and worked until March, 1972 "to supplement the income. All we had was the sick pay". Some of the hospital and medical bills introduced by plaintiff show payment by "The Travelers", an insurance company.

We find no objection or exception in the record relative to the issue of insurance prior to plaintiff's motion to set aside the verdict, and the exhibits were introduced by the plaintiff without objection. While we are not persuaded that error was committed, if so, it was error introduced into the record or invited by the party now seeking a reversal and will not be considered by us. *Clark* v. *Commonwealth*, 202 Va. 787, 120 S. E. 2d 270 (1961); *Godsey* v. *Tucker*, 196 Va. 469, 84 S. E. 2d 435 (1954); 1 B Mich. Jur., *Appeal and Error*, § 256, p. 360 (1967).

Plaintiff contends strongly that the verdict in this case is grossly inadequate. Liability on the part of defendant was established, and there is evidence from which the jury could have found that by reason of the accident plaintiff sustained permanent injuries which necessitated the expenditure of money for medical expenses and some loss of time from work, and that he suffered pain and discomfort, all justifying a substantial recovery. However, it is obvious that the jury concluded that all the damages sustained by plaintiff were not the result of his automobile accident with the defendant Giddings.

There is evidence from which the jury could have concluded that the impact, which allegedly caused the plaintiff's whiplash injury, was slight. Neither the plaintiff, the investigating officer nor the defendant thought at the time that there were any serious injuries involved. Plaintiff lost no time from work immediately following the injury and did not consult a physician between April, 1968 and March, 1969.

There is evidence that the enlarged epidural veins discovered in surgery by Dr. Castro, and which he regarded as the cause of plaintiff's dorsal spine problems, were not related to the accident, but were

a congenital abnormality, and further that plaintiff's condition was partially related to arthritis which predated the accident.

There was also evidence that Raisovich had been hospitalized for several days during 1965 for a "pulled muscle" in his back and during which he was in traction; that he had his little toe amputated in 1957; that he was in another automobile accident in 1955 which caused him to lose three months from work; and that in 1954 he suffered some injury to his ribs in a jeep accident.

We have often said that an impartial jury, properly instructed, is still the best tribunal to decide damages in personal injury cases. *Miller* v. *Motor Company*, 207 Va. 900, 153 S. E. 2d 266 (1967); *Natl. Fruit Product Co.* v. *Wagner*, 185 Va. 38, 37 S. E. 2d 757 (1946). And we have also held that where the jury's verdict in a personal injury case on the issue of damages is supported by a logical interpretation of the contested factual issues, then the verdict should not be set aside merely because the court might have found differently on the same issues in controversy. *Edmiston* v. *Kupsenel*, 205 Va. 198, 135 S. E. 2d 777 (1964).

In the recent case of *Brown* v. *Huddleston*, 213 Va. 146, 191 S. E. 2d 234 (1972), the jury returned a verdict of $1,500 although the plaintiff claimed special damages of $6,420. We held:

"From the evidence, the jury was entitled to find that the plaintiff had not been injured as seriously as she claimed. The jury was also justified in believing that only a portion of the special damages was reasonably related to the accident. This being so, the verdict cannot be disturbed on the ground that it was inadequate." 213 Va. at 147, 191 S. E. 2d at 235.

We have here a verdict rendered on conflicting evidence by an impartial jury and approved by the trial judge. The jury was fully and fairly instructed, and we find nothing in the record to establish that it disregarded the instructions or admonitions of the trial court.

The judgment of the lower court is

*Affirmed.*