## Richmond

JOHN DOE

v.

WELFORD W. WEST

September 11, 1981.

Record No. 790854.

Present: All the Justices.

*John W. Zunka (Taylor, Brooks, Zunka & Murray*, on brief), for appellant.

*W.W. Whitlock; James L. Lillie, III*, for appellee.

COCHRAN, J., delivered the opinion of the Court.

Welford W. West obtained a jury verdict of $2,800 against John Doe for damages for personal injuries resulting from an automobile accident. Upon motion of West, the trial court set aside the verdict as inadequate and granted a new trial in which West received a jury verdict for $30,000. On Doe's motion to set this verdict aside, the trial court put West on terms to accept either a remittitur of $15,000 or a new trial. West accepted the remittitur under protest.

On appeal, Doe contends that the trial court erred in setting aside the first verdict. West has assigned cross-error to the trial court's action in requiring him to accept a remittitur. The dispositive question is whether *Rome* v. *Kelly Springfield*, 217 Va. 943, 234 S.E.2d 277 (1977), upon which the trial court relied in setting aside the first verdict, is controlling. As we will hereafter demonstrate, *Rome* is distinguishable.

At the time of the accident, West, 23, was employed as a laborer in the construction of a nuclear power plant and earned approximately $200 per week. Dr. Earnest Carpenter, an orthopedic surgeon, testified that when he examined West on July 25, 1977, West reported that he had received injuries to his left shoulder and left collarbone in an automobile accident on December 24, 1976. Dr. Carpenter found that the fracture of West's collarbone had adequately healed, but with a slight "overriding" such as occurred in more than 75% of collarbone fractures, and that West had "normal range of motion" in his neck, shoulders and arms. As a result of the overriding, Dr. Carpenter was of opinion that West suffered a permanent 10% residual disability, "more cosmetic or . . . as much cosmetic as . . . otherwise," of the left shoulder. The doctor felt that an adult with a broken collarbone could go back "to any type of work" in 12 to 14 weeks after sustaining the injury.

West testified that he was injured on December 23, 1976, that he was taken by ambulance to a hospital after the accident, that his shoulder ached, and that a cross-strap bandage was applied. After an hour he was able to walk from the hospital to a car in which he was driven to his sister's home, where he remained until he "got well" in "close to two months." West said that, although he did not personally notify his employer of the injury, during the

same week in which the accident occurred he sent a message by his sister's boyfriend that he had been injured.

West maintained that before the accident he played basketball "sometimes," but that after the accident he played three games and then stopped because of the pain in his shoulder. He was embarrassed by the bump on his shoulder that was visible after the fracture had healed. Because he was concerned that people would see the bump and think he had been "in a fight or something like that," he no longer went shirtless in the summer.

John Foster, called as an adverse witness by West, testified that he worked for the same employer and was injured in the same accident in which West was injured. Foster called his employer and reported his injury, and returned to work on January 12, 1977. He accompanied West when West reported for work the first part of February, 1977, and found that his employment had been terminated.

The testimony of Robert Hogan, the employer's chief time-keeper, established the amount of West's wages. Hogan also explained the employer's policy of discharging any employee who failed to "call in" within three days to give notice that he was unable to work because of sickness or injury. The company records showed that West was discharged for absenteeism, but that he was rehired as a laborer by the same employer in August, 1977. Mortality tables were introduced in evidence to establish his life expectancy.

At the conclusion of the evidence, the trial court ruled as a matter of law that West was entitled to recover against John Doe and entered summary judgment for the other defendants. The case was then submitted to the jury on damages under an instruction that permitted the jury to consider any of the following which the jury believed from a preponderance of the evidence that West suffered or sustained:

    1. Any bodily injuries sustained and the extent and duration thereof;

    2. Any effect of any such injuries upon the plaintiff's health according to its degree and probable duration;

    3. Any physical pain and mental anguish suffered in the past, and any which may be reasonably expected to be suffered in the future;

4. Any disfigurement or deformity resulting to plaintiff and any humilation or embarrassment associated therewith;

5. Any inconvenience and discomfort caused in the past and any which will probably be caused in the future;

6. Any loss of earnings in the past by reason of being unable to work. . . .

In his argument to the jury, counsel for John Doe urged that the jury award West compensation of $200 per week for the period of twelve to fourteen weeks during which Dr. Carpenter testified West might have been unable to work. After the jury returned a verdict for West in the amount of $2,800, the trial judge took under advisement West's motion to set aside the verdict, but by letter opinion dated October 23, 1978, announced his decision to grant the motion. He stated that the jury had accepted the argument of Doe's counsel in awarding $200 for 14 weeks, and that while he felt that the jury should be permitted to disallow a claim for pain and suffering, disfigurement and deformity, he construed *Rome* to require that a verdict be set aside when the jury has disregarded the court's instructions on the elements of damages to be considered. The judge concluded that the jury in this case had disregarded some of the elements of damages other than loss of earnings and that he was compelled by *Rome* to set aside the verdict and grant a new trial on the issue of damages only.

In *Rome*, the plaintiff had been seriously and permanently injured. The uncontroverted evidence showed that his medical expenses to the date of trial were $56,871.52 and that he had lost wages in the amount of $23,047 because of his injuries. The jury verdict of $79,918.52, the aggregate amount of the medical expenses and lost wages, appeared to represent only two of the seven elements included in the damage instruction, although there was substantial evidence to support the other elements, *viz.*, "past and future physical pain and mental anguish, disfigurement and deformity, past and future inconvenience, future medical expenses, and the effect of such injuries upon Rome's health." *Id.* at 948, 234 S.E.2d at 281. Concluding that the jury had failed to consider all the elements of damages to which the plaintiff was entitled under the evidence, we reversed and remanded the case for a new trial.

In the present case, the evidence as to lost wages was conflicting. West contended that, except for a few odd jobs, he was una-

ble to work for 33 weeks, from the date of the accident on December 23, 1976, until he was rehired in August of 1977. His medical expert, however, testified that West could have returned to work in 12 to 14 weeks at the latest. West's friend and fellow employee, Foster, testified that West sought to return to work in early February, 1977, but found that his employment had been terminated. Indeed, West himself conceded that he had recovered at his sister's house approximately two months after the accident, and that he attempted to return to his employment in March, 1977. Under this conflicting evidence the jury could have found that West was entitled to compensation for lost wages for not more than six weeks.

Doe's counsel suggested in argument to the jury that Dr. Carpenter's testimony be accepted and that if the jury wished to be generous to West it could allow him compensation for 12 to 14 weeks. Nevertheless, in view of the evidence, the jury did not have to accept this argument. It may have decided to award him compensation for 12 weeks of lost wages at $200 per week, and $400 for other elements of damages which could be taken into consideration under the instruction. There was no evidence of the medical expenses incurred by West; no medical bills were presented. Dr. Carpenter testified to a 10% permanent disability from the overriding of the collarbone, but he ackowledged that 75% of persons who suffer fractured collarbones have similar overriding and that such would not affect use or range of motion of the arms. He also negated any claim for future pain and suffering, inconvenience or discomfort.

We have long held that where an impartial jury properly instructed has determined the issue of damages in a personal injury case, the verdict should not be disturbed if it is supported by a logical interpretation of the factual issues. *Raisovich* v. *Giddings*, 214 Va. 485, 489, 201 S.E.2d 606, 609 (1974). *Rome* is consistent with this principle. The verdict in that case could not be reconciled with any logical interpretation of the evidence as to damages. In the present case, however, the record, unlike that in *Rome*, does not contain uncontradicted evidence as to the severity of the plaintiff's injuries or the amount of his actual monetary loss resulting from the accident. The jury reasonably could have concluded that West did not suffer pain and discomfort to the extent he claimed, that he suffered no permanent disability that would impair his ability to work, and that he was entitled to compensa-

tion for lost wages for a lesser period than 12 to 14 weeks, and to a modest additional sum for pain and suffering.

■ The failure of the jury to return, from conflicting evidence, a verdict in a greater amount than the trial judge's calculation of West's lost wages does not justify the inference that the jury failed to consider all the elements of damages permitted under the court's instruction. We cannot say that the verdict was based upon an unreasonable interpretation of the evidence, which was susceptible to different findings. Under these circumstances, the trial court should not have set aside the first verdict. *See May* v. *Leach*, 220 Va. 472, 473-74, 260 S.E.2d 456, 457 (1979); *Brown* v. *Huddleston*, 213 Va. 146, 147, 191 S.E.2d 234, 235 (1972).

Accordingly, we will reverse the judgment of the trial court entered on November 13, 1978, setting aside the first verdict. We will reinstate that verdict in the amount of $2,800, with interest at 8% from December 23, 1976, and enter final judgment thereon.

*Reversed and final judgment.*