JAMES L. DEWALD

V.

JAMES C. KING

Record No. 831759

March 6, 1987

Present: All the Justices

*William D. Breit (Breit, Rutter & Montagna*, on briefs), for appellant.

*Robert G. Winters (Mark L. Early; Reynolds, Smith & Winters, P.C.; Tavss & Fletcher*, on brief), for appellee.

THOMAS, J., delivered the opinion of the Court.

James L. DeWald sued James C. King to recover damages for personal injuries allegedly sustained when the car King was driving struck DeWald. The case was tried to a jury which returned a verdict for DeWald in the amount of $4,500.

DeWald appeals, contending that the verdict was inadequate and that the trial court should have set the verdict aside and awarded a new trial. In addition, DeWald contends that the trial court should not have permitted King to adduce evidence of DeWald's alcoholism. King assigns cross-error, contending that DeWald failed to prove that King's car struck DeWald or that King otherwise injured DeWald. In our opinion, the cross-error is without merit. Moreover, we are of the view that DeWald's assignments of error are well founded. Therefore, we will reverse the judgment of the trial court and remand the case for a new trial.

Upon familiar principles, we will consider the facts in the light most favorable to DeWald who prevailed below. On the day of the accident, March 8, 1980, DeWald was helping a friend, Donald G. Owens, deliver heating oil. In order to make a delivery, Owens stopped the truck in front of a house, in the curb-side lane of a four-lane, undivided thoroughfare, and turned on his flashing lights. After the delivery was made, DeWald carried the nozzle of the delivery hose from the residential fuel tank and laid it on the ground beside the truck in preparation for rewinding the hose. Owens was standing on the curb, to the right rear of the truck,

with one hand on the truck near the button that controlled the winding mechanism. DeWald was standing as close to Owens as he could "without getting in his way." DeWald was positioned closer to the side from which traffic was coming.

King, who said he did not see the truck until he was too close to stop, drove into the right rear of the truck. DeWald testified that the car struck him and knocked him into a nearby yard. He was knocked unconscious.

DeWald was visibly injured at the scene of the accident. There, he complained of injuries to his legs and his head. He was taken to the emergency room where he complained of injuries to his legs, head, and back. He was bleeding from head and face wounds; these wounds were sutured in the emergency room. While in the emergency room he received no treatment for his legs. Though his legs hurt him when he walked, plaintiff, assuming that he would be all right, left the emergency room and went to stay with a friend because he did not think he could climb the stairs to his own apartment.

DeWald returned to the hospital four days later, on March 12, 1980. At that time, both his legs were swollen to a point just below the knees and both had turned blue. He was admitted to the hospital because of the problem with his legs. X-rays established that the fibulae of both legs were broken. The breaks were consistent with being struck by a car. According to a physician who testified at trial, the position of the breaks indicated direct pressure on plaintiff's legs as opposed to injuries that might have been caused from twisting or falling. In addition to the broken legs, DeWald suffered a strain of the knee ligaments in one leg. DeWald remained in the hospital from March 12, 1980, to April 2, 1980.

Defendant raised the issue of plaintiff's alcoholism in his cross-examination of the physician who testified on behalf of plaintiff. The admissions record contained a notation that plaintiff was an alcoholic. However, DeWald's doctor said plaintiff was not admitted because of his alcoholism. Instead, he was admitted because of his leg injuries. Defendant's counsel asked whether plaintiff's alcoholism had lengthened plaintiff's hospital stay. The witness testified that it had not. He explained that bones will heal at approximately the same rate whether or not the patient is an alcoholic. Moreover, he explained that in his opinion plaintiff's hospital stay was appropriate to his injuries.

Defendant called only one witness, the defendant himself. The gravamen of King's testimony was that he did not see the truck until immediately before the accident. He did not attempt to contradict any of plaintiff's evidence of damages.

The case was submitted to the jury, which was given the following damage instruction:

> If you find your verdict for the plaintiff, then in determining the damages to which he is entitled, you may consider any of the following which you believe by the greater weight of the evidence was caused by the negligence of the defendant:
>
> 1. any bodily injuries he sustained and their effect on his health according to their degree and probable duration;
> 2. any physical pain and mental anguish he suffered in the past and any that he may be reasonably expected to suffer in the future;
> 3. any disfigurement and any associated humiliation or embarrassment;
> 4. any inconvenience caused in the past
> 5. any medical expenses incurred in the past
> 6. any earnings he lost because he was unable to work.
>
> Your verdict should be for such sum as will fully and fairly compensate the plaintiff for the damages sustained as a result of the defendant's negligence.

The jury returned its verdict on a blank verdict form supplied by the court. The verdict was handwritten and appeared substantially as follows:

> We, The jury, on The issues Joined Find in Favor      $4,500.00
> of THE PLAINTIFF AND ASSESS HIS DAMAGES AT    ~~4,749.27~~
>      Hospital bills of $3,629.27
>      2 months lost wages $1,120.00    (    Rounded)

Plaintiff moved to set the verdict aside as inadequate. After post-trial briefs and argument, the trial court entered judgment on the verdict.

■ Turning first to a consideration of defendant's assignment of cross-error, we conclude that the trial court did not err in refusing to strike plaintiff's evidence and in denying defendant's motion for

summary judgment. The essence of defendant's argument on cross-error is that plaintiff failed to prove that he was struck by defendant's car. Yet both Owens and DeWald testified that they were hit by King's car. Further, the two men were standing near the right rear of the truck and the right rear of the truck was most heavily damaged. In addition, DeWald's physician testified that DeWald's injuries were of a type most likely caused by direct pressure and were consistent with being struck by a car. Defendant's cross-error cannot be sustained.

Plaintiff cites *Rome* v. *Kelly Springfield*, 217 Va. 943, 234 S.E.2d 277 (1977), in support of his contention that the verdict in the instant appeal was inadequate. *Rome* was a personal injury case. The damage instruction used in *Rome* contained seven factors for the jury to consider in determining damages. In *Rome*, plaintiff proved, without contradiction, medical expenses of $56,871.52 and lost wages of $23,047.00. The jury returned a verdict of $79,918.52, an amount exactly the same as the sum of the medical expenses and lost wages. The trial court upheld the verdict. We reversed and remanded. We pointed out in *Rome* that there was substantial evidence of the other elements of damages. We concluded that the jury's verdict represented only two of the seven damage elements. We wrote that "[t]he verdict is therefore inadequate and invalid as a matter of law because it demonstrates the jury has disregarded the instruction on damages." *Id.* at 948, 234 S.E.2d at 281.

Defendant argues that *Rome* is distinguishable. He argues that, unlike the verdict in *Rome*, the verdict in this case is not in the exact amount of plaintiff's proof of medical expenses and lost wages. According to King, the verdict of $4,500 is a general verdict which can be reasonably understood and that, therefore, the controlling cases are *Brown* v. *Huddleston*, 213 Va. 146, 191 S.E.2d 234 (1972); *May* v. *Leach*, 220 Va. 472, 260 S.E.2d 456 (1979); and *Doe* v. *West*, 222 Va. 440, 281 S.E.2d 850 (1981).

In *Brown*, the plaintiff proved out-of-pocket losses of $6,420. However, the jury returned a verdict of $1,500. We held that the verdict was not inadequate. We said that the jury could have believed that the plaintiff was not injured to the extent alleged and could have believed that all of the expenses were not related to the injury.

In *May*, plaintiff proved out-of-pocket losses of $1,324.06. The jury returned a verdict of $1,323.76, thirty cents less than the out-

of-pocket expenses. We rejected the argument that *Rome* was controlling. We said that the record lacked substantial evidence of plaintiff's injuries and raised serious questions concerning time lost from work and the amount of medical expenses. We relied on *Brown* and applied the rationale that the jury might not have believed that plaintiff was injured as seriously as claimed or that all expenses were related to the injury complained of by plaintiff.

In *Doe*, we again distinguished *Rome*. The plaintiff in *Doe* claimed lost wages of $200 per week. A doctor testified that plaintiff might not have been able to work for 12 to 14 weeks due to his injuries. The jury returned a verdict of $2,800. The trial court set it aside. We held that the verdict should not have been set aside. We noted that the record in *Doe* did not contain uncontroverted evidence of the severity of plaintiff's injuries or of his actual monetary loss. We pointed out that the evidence in *Doe* was conflicting. We said further that though the verdict did not exceed the upper range of plaintiff's proof of lost wages the verdict was not thereby rendered inadequate. In reinstating the $2,800 verdict, we cited *May* and *Brown. Doe*, 222 Va. at 446, 281 S.E.2d at 853.

■ The instant case differs from the *Brown, May,* and *Doe* line of cases. Each of those cases involved a general verdict based on conflicting evidence. In those cases, it could not be said that the jury considered only certain of the damage elements while ignoring others. Had the jury in this appeal simply reached a verdict of $4,500, this case would more reasonably fit within the line of cases relied on by defendant in his effort to uphold the verdict.

This appeal is more like *Rome* in that in this case there was substantial, uncontroverted evidence of each element of damages referred to in the pertinent jury instruction. More specifically, there was uncontroverted evidence of bodily injury; physical pain and mental suffering; disfigurement; past inconvenience; past medical expenses; and lost earnings.

This appeal is similar to *Rome* in another important way: We can tell from the verdict form what elements the jury considered in reaching its verdict. Although the jury should not have written anything on the form except its general verdict, once it went further and listed medical expenses and lost wages, we cannot ignore that information. On the face of the verdict form, the jury makes plain that it completely accepted plaintiff's evidence of medical expenses. Further, the face of the verdict form shows that the jury

valued plaintiff's loss of income at $1,120. No other element of damages is listed.

In *Rome*, we concluded that — because the verdict was in the exact amount of the evidence of medical expenses and lost wages and because the evidence of the other damage elements was uncontroverted — the jury had disregarded the trial court's damage instruction. In this case, we reach the same conclusion but for a different reason. Here, it is not the ultimate verdict that establishes the disregard of the damage instruction. Here, what the jury wrote on the verdict form makes clear that only two elements of damages were considered. We hold that the verdict was inadequate and should have been set aside.

Our ruling on the jury verdict issue requires us to remand this case. Therefore, it is necessary for us to resolve the question of the relevancy of evidence of plaintiff's alcoholism to his claim for damages for personal injuries. In our view, plaintiff's alcoholism has nothing whatever to do with this case. On this issue, defendant argues that he is entitled to inquire "into those matters which could result in the presentation of a factual issue for the jury to resolve as to the breach of a duty by the injured to minimize his damages." Defendant also argues that defendant's alcoholism was relevant because "it is a matter of common knowledge that an alcoholic does not exercise the same degree of self-care as does a non-alcoholic generally."

Defendant's reasons for questioning plaintiff concerning plaintiff's alcoholism are not persuasive. He cites no authority in support of either proposition. This case did not involve an issue of minimizing damages. There was no evidence of a failure to mitigate and there was no instruction in that regard.

Defendant's second justification for adducing evidence of plaintiff's alcoholism amounts to an assertion that whenever an alcoholic sustains personal injuries the fact that he is an alcoholic is relevant. The rules of relevancy do not reach that far. On remand, the evidence of plaintiff's alcoholism will not be admissible.

The defendant did not seriously contest liability. He put on virtually no evidence sufficient to relieve him of liability for this accident. His evidence was simply that he did not see the stopped de-

livery truck until it was too late to avoid hitting it. Consequently, the trial of this case on remand will be limited to the question of damages. *Cf. Rome* v. *Kelly Springfield*, 217 Va. 943, 234 S.E.2d 277 (1977).

*Reversed and remanded.*