## CIRCUIT COURT OF THE CITY OF ROANOKE

Mary H. Page

v.

K-Mart Corp.

April 22, 1987

Case No. CL86-000292

By JUDGE CLIFFORD R. WECKSTEIN

This matter is before the Court on the plaintiff's motion to set aside a jury's verdict in a personal injury suit. Both parties have submitted letter-memoranda, and the motion has been argued orally.

The plaintiff, Mary H. Page, alleged that she sustained injury caused by a slip or fall at a store operated by the defendant, K-Mart Corporation, and that K-Mart's negligence proximately caused her accident. Mrs. Page presented evidence that, as a result of this accident, she had incurred medical expenses of $671.94 prior to trial.

The jury found its verdict in favor of Mrs. Page, and fixed her damages at $671.94. Pointing out that the verdict was in the precise amount of the plaintiff's past medical expenses, that the damage instruction given to the jury set forth five elements for the jury to consider in fixing damages, and that the plaintiff had adduced evidence on each of these elements, Mrs. Page has asked that the verdict be set aside, and that the Court order a new trial.

Having considered the evidence, the instructions, the authorities and memoranda submitted, and the arguments of counsel, the Court is of opinion that the motion to

set aside should be denied, and the jury's verdict confirmed.

*Rome* v. *Kelly Springfield*, 217 Va. 943, 234 S.E.2d 227 (1977), and *DeWald* v. *King*, 233 Va. ---, 354 S.E.2d 60, 3 V.L.R. 1999 (Record No. 831759, March 6, 1987), relied upon by the plaintiff, are distinguishable from the case at bar. The crucial distinction between this case, on the one hand, and *Rome* and *DeWald*, on the other, is that, in the case at bar, the defendant seriously and credibly contested both liability and except for the plaintiff's past medical bills, each of the elements of damages.

In *Rome*, the jury's verdict was in the precise amount of the plaintiff's medical expenses and lost wages. In *DeWald*, the verdict form showed that the jury had awarded "hospital bills" and "lost wages," and "rounded" the figure. The damage instruction given in the case at bar (Instruction No. 11) is nearly identical to the instruction given in *DeWald*.

In *DeWald*, "like *Rome*. . . there was substantial uncontroverted evidence of each element of damages referred to in the pertinent jury instruction." *DeWald*, 3 V.L.R. at 2005.

In the case at bar, however, the defendant seriously contested liability, *cf. DeWald*, 3 V.L.R. at 2007, and the evidence was seriously in conflict as to all of the elements of damages except the plaintiff's past medical expenses.

The plaintiff presented the testimony of Terry Miller, an orthopedic surgeon who treated Mrs. Page. He first saw Mrs. Page on May 22, 1984, following her April 25, 1984, accident; he last saw her in October of 1986.

Dr. Miller testified that, as a result of the accident, Mrs. Page has a 15 to 20% disability of her left leg, which translates to a 5% disability of the whole body. He testified that the accident caused a fracture, which caused tendonitis, which resulted in disability. He also testified, however, that he had recommended surgery to Mrs. Page when more conservative treatment failed to resolve her difficulties, and that Mrs. Page had steadfastly refused to undergo surgery due to a strong fear of the general anesthesia which he believed would be necessary for the surgery.

When asked what the cost of the recommended surgery would be, Dr. Miller, stating that his answer was "a guess," testified that his fee would be $500.00, that the anesthesiologist's professional charge would be "a couple of hundred dollars," that he did not know whether the surgery could be done on an outpatient basis, and that hospital charges might run from $500.00 to $1,000.00.

On cross-examination, Dr. Miller testified that it is his "fairly strong opinion that surgery might have reduced the plaintiff's disability to 4 to 10%, and might have left the plaintiff totally free of accident-related disability.

He also told the cross-examiner that disability ratings are estimates, and that the disability rating he assigned to Mrs. Page was based, in chief, on talking to her, rather than on physical examination.

The basic jury instruction on damages (Instruction No. 11) required the jury to fix damages for such of the elements of damages as the jury found were proven by a preponderance of the evidence. Instruction No. 12 reiterated that the plaintiff had the burden of proving by a preponderance each element of damages she claimed, and further told jury that the plaintiff had the burden of showing sufficient facts and circumstances to permit the jury to reasonably estimate each item of damages claimed. Instruction No. 13 advised the jury of the plaintiff's duty to mitigate damages. Each of these instructions was given without objection; they are part of the law of the case.

Since Dr. Miller testified that the surgery he recommended could have totally resolved the plaintiff's disability, the jurors would have been justified under the instructions in finding that the plaintiff had failed to prove permanency.

From the testimony of Dr. Miller, and under the instructions, the jurors would have been entitled to find that Mrs. Page's decision not to follow her doctor's recommended course of treatment constituted a failure to minimize her damages; or, put differently, to conclude that Mrs. Page had failed to prove that her continued functional disability stems from K-Mart's negligence, rather than her refusal to mitigate damages by undergoing surgery. The jury could have concluded that the evidence demonstrated failure to minimize damages, and that the

greater weight of the evidence failed to prove the degree of disability that would have existed (if any) had reasonable mitigation taken place. The jurors could have concluded that the disability evaluation was insufficiently grounded in objective fact to constitute proof by a preponderance of the evidence. The jury would have been justified in finding that no future medical expenses had been proven, given the plaintiff's refusal to undergo surgery, or that Dr. Miller's "guess" as to the cost of surgery did not rise to the height required by the instructions.

Mrs. Page, as well as witnesses Agnes Driskell and Lathan L. Page (the plaintiff's husband), testified to continuing pain that the plaintiff manifests; that she continues to limp, and did not do so previously; and that her activities are now restricted. All testified that Mrs. Page used to enjoy golf, bowling and dancing, but that (except for one painful attempt to bowl) Mrs. Page now, and as a result of the accident, does not engage in these activities. Mr. Page and Mrs. Driskell testified that Mrs. Page enjoyed going shopping, as a recreational sort of activity, but that Mrs. Page can no longer do this.

The jury observed Mrs. Page walk in the courtroom. The defendant introduced, and the jury viewed, videotapes (Exhibit 7) of Mrs. Page walking when, unbeknownst to her, she was being observed and videotaped by a private detective employed by the defendant, Raymond O. Steele. In one of these tapes, Mrs. Page was shown getting out of her car walking into her house; in the other, she was shown leaving a Lynchburg Family Dollar Store, and walking to her car. Dr. Miller testified that Mrs. Page no longer limps when she is in his office. He testified that Mrs. Page's condition improved over the time he treated her; Mrs. Page testified that there has not been any improvement. The jury had the right, considering all of this evidence, to conclude that the plaintiff's limp and restrictions were not so severe as the plaintiff claimed, or even to conclude that this evidence furnished a basis to disregard the testimony offered by the plaintiff and her witnesses.

Mrs. Page testified that she had suffered arthritis in her left hip for some 15 to 20 years. (The injury complained of in this case was to her left foot.) The hip, she testified, becomes stiff in bad weather. She

takes Tylenol and aspirin for the arthritis, she testified. Dr. Miller testified that he had no knowledge concerning the plaintiff's arthritis.

On the whole of the evidence, the jurors could have rationally concluded that the plaintiff's evidence presented an unduly exaggerated picture of pain, suffering, disability, deformity, humiliation or embarrassment, and inconvenience, *see Brown v. Huddleston*, 213 Va. 146, 147, 191 S.E.2d 234 (1972), and the jurors could have concluded that the plaintiff's proof on these elements therefore failed to meet the burden that the law imposed on them.

Instruction 15 (given without objection and the law of the case) of course told the jurors that they were the judges of the credibility of witnesses and the weight of the evidence; that they had the prerogative to discard or accept all or part of any witness's testimony, when considered in connection with other evidence in the case; and that they could use their common sense in judging the testimony. As is obvious from the foregoing recital of some of the evidence, this Court is of the opinion that (except as to past medical bills) genuine jury issues existed as to each of the elements of damages. On each of these elements, the plaintiff bore the burden of proof by the greater weight of the evidence. The jury, even after finding the defendant negligent, would have been justified, weighing the evidence, in concluding that the plaintiff had failed to meet her burden on any of the elements of damages except past medical expenses.

This, then, is not a case, like *Rome* or *DeWald*, in which the jury's verdict or verdict form demonstrates that the jury disregarded the Court's damage instruction. Notwithstanding the fact that the verdict was in the precise amount of the plaintiff's past medical expenses, the Court is of the opinion that a conscientious jury, carefully following the Court's instructions could, in a case in which each of the elements of damages was in genuine controversy, have reached the verdict that this jury returned. *See Raisovich v. Giddings*, 214 Va. 485, 489, 201 S.E.2d 606 (1974); *Doe v. West*, 222 Va. 440, 445-46, 281 S.E.2d 850 (1981). Therefore, the Court concludes that the motion to set aside the verdict should be denied, and that an order should be entered confirming the jury's verdict.