VALERIE J. MASTIN

v.

DWAYNE A. THEIRJUNG

Record No. 880538

September 22, 1989

Present: All the Justices

*William D. Breit (Breit, Drescher & Breit, P.C.*, on brief), for appellant.

*John G. Crandley (Preston, Wilson & Crandley*, on brief), for appellee.

Justice Whiting delivered the opinion of the Court.

In this personal injury case, the primary issue is whether the evidence required the jury to find that the plaintiff suffered compensable injury in an automobile collision caused by the defendant's negligence. Additionally, we determine whether the trial court erred in: (1) granting an instruction dealing with the plaintiff's burden of proving her damages; (2) permitting the defendant to call the plaintiff solely for impeachment purposes; and (3) allowing evidence of the plaintiff's background of drug and alcohol abuse.

On Friday, May 16, 1986, about 7:00 p.m., Valerie J. Mastin was a passenger in her husband's Chevrolet car when it was struck in the rear by a Dodge van driven by Dwayne Aaron Theirjung.[1] The front bumper of the Dodge was higher than the

---

[1] Theirjung's name is also spelled Thierjung in various pleadings, including some filed by his counsel. There is no document signed by him in the file; therefore, we have adopted the spelling in the motion for judgment and first responsive pleading.

Mastin testified that the collision occurred on May 16, 1986, but paragraph 1 of her original motion for judgment alleged that it occurred on May 17, 1986. Also, Theirjung, and his mother and father, who were called to the scene shortly after the collision happened, testified that it occurred on Saturday afternoon, May 17, 1986. Because there was no evi-

rear bumper of the Chevrolet; consequently, it cracked one of the Chevrolet's rear tail lights and slightly dented its trunk lid.

Mastin sued Theirjung to recover for injuries allegedly sustained in this collision, and a jury returned a verdict in the following language: "In favor of the plaintiff sum of damages $0.00." The trial court entered judgment on the verdict, and we awarded Mastin this appeal. Because the jury returned a verdict for Theirjung on the issue of damages, we summarize the facts on that issue in the light most favorable to him. *See House v. Hall*, 182 Va. 645, 646, 29 S.E.2d 844, 844 (1944).

When the collision occurred, the impact jarred Mastin and caused her to spill hot coffee on herself, but the investigating police officers said it was not necessary to make a report of the accident because there were no personal injuries involved. Mastin and her husband went to the 8:00 p.m. concert to which they were *en route* at the time of the collision, but left after about 45 minutes because Mastin became nauseated and her right arm began to grow numb.

Although Mastin claimed she did not sleep much that night and was "still hurting," she went to her job as a waitress at 7:00 a.m. the following morning. Mastin worked until 12:30 or 1:00 p.m., when she "felt sicker and sicker," got a headache and vomited, and went home. About four hours later, she saw Dr. Marc H. Blasser, a Navy doctor at the Sewells Point Clinic, who found no objective data to support Mastin's claim of a tingling in her right hand, but prescribed a medicine for back strain and told Mastin to stay in bed for three days. Mastin stayed in bed all of Sunday and worked only part of the following Monday. She said she went home early because she "still had a pretty bad headache," her back and legs began to hurt, and her right leg "started falling asleep."

That evening, Mastin saw another Navy doctor, Ray E. Stedwell, at the Portsmouth Naval Hospital, who diagnosed her condition as muscle spasms in the neck, or neck strain. Although Mastin indicated that she told Dr. Stedwell of her leg pain, he had no notation of it in his records. Despite Dr. Stedwell's prescription of "strict bed rest" with heat for a period of three to 10 days, Mastin was off work only on Tuesday and part of Wednes-

---

dence that Mastin had suffered another injury shortly before the Theirjung accident, we attach no importance to this conflict in the date of the accident.

day, resumed her regular schedule on Thursday, and worked until June 28, 1986, when she said she stopped because of her injuries.

Dissatisfied with the treatment she received from the first two doctors, on June 3, 1986, Mastin consulted Dr. Raymond Iglecia, a neurologist and psychiatrist specializing in chronic pain problems. After a number of visits, Dr. Iglecia compiled an extensive history of Mastin's background and conducted psychological testing and pain evaluation.

The following is a summary of Dr. Iglecia's testimony. Mastin was suffering from a post-traumatic stress disorder, characterized more particularly as an atypical somatiform disorder with chronic pain secondary to that disorder. This disorder is brought on by some traumatic experience in which mental experiences or states are converted into bodily symptoms. Insufficient data exists regarding illnesses such as Mastin's to permit scientists to determine whether the originating trauma is physical or psychological, and such trauma in Mastin's case could have been an argument with her husband. In patients with personalities like Mastin's, there is a definite potential for motives of secondary gain, arising out of the possibility of recovery of money damages in a lawsuit. Mastin is also suffering from alcohol abuse in remission and has traits of an hysterical personality.

Mastin assigns four grounds for reversal. We find no merit in any of them.

## I.

Mastin argues that the verdict is inadequate as a matter of law, citing *Bradner* v. *Mitchell*, 234 Va. 483, 362 S.E.2d 718 (1987). Although this personal injury case and *Bradner* involve jury findings of negligence, *Bradner* is inapposite; there the jury found that the plaintiff was entitled to recover damages but awarded an amount inadequate as a matter of law. *Id.* at 490, 362 S.E.2d at 723. Here, the jury found that Mastin was not entitled to recover *any* damages. Therefore, the issue is whether Mastin introduced sufficient evidence to *require* the jury to award her damages. We conclude that she did not for the reasons which follow.

First, the jury could have found that Mastin's alleged injuries were feigned. Dr. Stedwell indicated that he had to rely upon Mastin's account of the accident in his diagnosis of her injuries. The jury could have assumed that the other doctors who treated

her were in the same position. Dr. Iglecia noted that the degree of impact was of some importance, and Dr. Lawrence Morales, an orthopedist to whom Dr. Iglecia had referred Mastin for an evaluation, noted that Mastin said she was "thrown violently within the confines of the car." The physical evidence was to the contrary. The jury could have inferred that Mastin had also described the severity of the accident in similar fashion to the other three doctors. Having in mind Dr. Iglecia's testimony about the definite potential for motives of secondary gain, the jury could have inferred from the minor damage to the vehicles that Mastin was not "thrown violently," as she claimed.

Moreover, Mastin was not consistent in describing her injuries or her treatment. She testified that she went to Dr. Stedwell for further treatment and implied that she mentioned a pain in her leg at the time, although he neither noted that pain in his patient history nor testified about it. Mastin claims she took at least four of the therapy treatments prescribed by Dr. Iglecia, yet he testified that she took none of them, despite several requests that she do so. None of Dr. Iglecia's bills which Mastin introduced in evidence indicated charges for those services.

Mastin was also inconsistent in describing her work history after the accident. On direct examination, she claimed that she only worked for parts of three days after the accident, and did not return to work after Wednesday, May 22, 1986. When cross-examined on this subject, she modified her testimony by admitting that through late June she only worked "[o]ff and on. Maybe I'd go in one day and I was out three days, I couldn't work." Yet her employer testified later that she worked her full five-day schedule for four full weeks after the accident, in addition to one week of more than 40 hours.

Second, the jury may have decided that Mastin did suffer from a post-traumatic stress disorder but that it was a result of some other traumatic experience. Given Mastin's history of two previous marriages to her present husband and Dr. Iglecia's testimony that the trauma of an argument between the two could have produced Mastin's disorder, the jury might have concluded that her complaints came about for that reason.

■ Theirjung might have been responsible for Mastin's unusual reaction to a minor trauma *if* the jury had concluded that the collision caused that reaction. *See Diggs* v. *Lail*, 201 Va. 871, 876-77, 114 S.E.2d 743, 747-48 (1960). Nevertheless, as the sole

judges of the weight and credibility of the evidence, the jury could also have concluded that it was equally likely that Mastin's difficulties either arose from some other cause unrelated to the trauma of the collision or were feigned, and thus that Mastin failed to carry her burden of proving causation. *See Smith v. Wright*, 207 Va. 482, 485-86, 151 S.E.2d 359, 362-63 (1966).

## II.

■ Next, Mastin argues that the court erred in its inclusion of the second paragraph of Instruction 16, which reads as follows:

And if you believe from the evidence that a particular injury complained of by the plaintiff may have resulted from either of two causes, for one of which the defendant might have been responsible and for the other of which he was not, and if the jury are unable to determine which of the two causes occasioned the injury complained of, then the plaintiff cannot recover therefor.

Mastin's objection to the trial court was that there was no evidence indicating that the injuries arose from any cause other than the collision, and that the only issue was "the extent of the injuries complained of." As we have already pointed out, there was a substantial issue whether any of Mastin's alleged injuries were caused by the collision.

■ Now, on appeal, Mastin also argues that the instruction was confusing in certain respects. We will not consider this argument because it was not made in the trial court. Rule 5:25; *Southers v. Price*, 211 Va. 469, 471-72, 178 S.E.2d 685, 687 (1971); *Taylor v. Turner*, 205 Va. 828, 832-33, 140 S.E.2d 641, 644 (1965).

## III.

Mastin complains that the trial court permitted Theirjung to call her to the stand as a part of his case in rebuttal, solely to impeach her credibility. When called, Mastin's impeachment testimony indicated that, in her discovery depositions, she had denied any previous traumatic injury, contrary to Dr. Blasser's testimony of her account of having been in an automobile accident five years earlier with resulting back trouble.

■ Mastin relies principally upon the case of *Smith v. Lohr*, 204 Va. 331, 130 S.E.2d 433 (1963), in which we held it was

prejudicial error to recall an adverse party as a witness merely to prove his bad character by showing a felony conviction. The decision is inapposite because it is grounded on the principle embodied in Code §§ 8-291 and -292,[2] now Code §§ 8.01-401(A) and -403, that a litigant cannot call an adverse party as a witness and impeach his character by evidence of bad reputation. Those statutes, however, do not preclude impeachment of an adverse party by prior inconsistent statements. The issue here is whether the trial court erred in permitting such impeachment on rebuttal when it could have been done earlier in the cross-examination of Mastin. This is a matter resting within a trial court's sound discretion, *Henning* v. *Thomas*, 235 Va. 181, 189-90, 366 S.E.2d 109, 114 (1988), and we cannot say that the court abused its discretion in the present case.

## IV.

■ Finally, Mastin argues that the trial court erred in permitting Theirjung to cross-examine Dr. Iglecia regarding her prior history of alcoholism and drug consumption. If a plaintiff's alcoholism has no relevance in a personal injury case, it is not admissible. *DeWald* v. *King*, 233 Va. 140, 146, 354 S.E.2d 60, 63 (1987). Unlike *DeWald*, where DeWald's alcoholism had nothing to do with his credibility or the issues of liability and damages, such evidence was relevant to Mastin's claims of injury and her credibility.

One of Dr. Iglecia's diagnoses was of alcohol abuse in remission. If it was not in remission, it may have caused Mastin's complaints of injury. Mastin recognized this by asking Dr. Iglecia whether her prior history of alcoholism made it difficult to treat her post-traumatic stress disorder. Dr. Iglecia agreed that it did. When Dr. Iglecia testified that Mastin had advised him that her alcoholism had been in remission for about two years, Mastin asked whether her dormant alcoholism affected her stress disorder, and the doctor said that it did not. Obviously, evidence from the history that Mastin provided Dr. Iglecia that she had recently

---

[2] Code § 8-291 provided that "[a] party called to testify for another, having an adverse interest, may be examined by such other party according to the rules applicable to cross examination."

Code § 8-292 provided in pertinent part: "[a] party producing a witness shall not be allowed to impeach his credit by general evidence of bad character . . . ."

been consuming substantial quantities of alcohol, cast considerable doubt upon Dr. Iglecia's opinion, as well as Mastin's credibility as a witness.

For the foregoing reasons, we find no error in the record. Accordingly, we will affirm the judgment of the trial court.

*Affirmed.*