Present:  All the Justices

DONNA HONSINGER

v.  Record No. 021761

OPINION BY
JUSTICE LAWRENCE L. KOONTZ, JR.
September 12, 2003

SHEILA F. EGAN

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
M. Langhorne Keith, Judge

In this appeal, we consider whether the trial court erred in refusing to grant certain jury instructions proffered during the trial of a personal injury lawsuit.

BACKGROUND

This case arose from an automobile accident that occurred on October 24, 1998 in Fairfax County involving motor vehicles operated by Sheila F. Egan (Egan) and Donna M. Honsinger (Honsinger).  For purposes of our resolution of this appeal, the facts surrounding the occurrence of that accident are not pertinent.  Honsinger's liability is not at issue here.

On December 2, 1999, Egan filed a motion for judgment in the Circuit Court of Fairfax County (the trial court) against Honsinger alleging that Egan suffered various injuries in the 1998 accident.  She alleged that those injuries included "traumatic brain injury" and "post-traumatic stress disorder and other mental anguish, fear, anxiety, depression and loss of energy, focus and stamina."  Egan alleged that as a result of her injuries she had suffered "lost earning capacity and loss of

occupation as a professional singer."  She sought damages of $2,500,000.

The subsequent trial essentially became a battle of experts with regard to Egan's asserted injuries and damages.  There was evidence that two days after the accident, Egan went to the emergency room of the Columbia Reston Hospital Center complaining of dizziness, vertigo, and headaches.  The attending physician there referred Egan to Dr. Ruben Cintron, a neurologist, who treated her for a multitude of symptoms including headaches, fatigue, memory problems, mood swings, and depression.  Dr. Cintron concluded that these symptoms were consistent with a mild traumatic brain injury caused by acceleration and deceleration forces upon Egan during the 1998 accident.  Dr. Cintron referred Egan to Dr. John W. Wires, a neuropsychologist, to aid in her treatment.  Dr. Wires concurred with the diagnosis made by Dr. Cintron.

Honsinger's asserted theory of the case was that Egan's "constellation" of conditions or symptoms arose from other causes that were unrelated to the accident.  This "two causes" defense is the principal focus of the issue now before us.

Honsinger introduced evidence that Egan had suffered through a series of traumatic events in her life, including a sexual assault, her parents' divorce, and her own divorce. Additional evidence showed that Egan also suffered from adult-

onset diabetes.  There was some indication that her insulin levels had fluctuated both before and after the accident, and that Egan had been hospitalized because of high blood sugar in 2000.

To counter Egan's evidence regarding a traumatic brain injury and its attendant symptoms, Honsinger presented evidence that Egan had complained of similar symptoms prior to the 1998 accident, most notably during a visit to a chiropractor in 1995. A document relating to that visit showed handwritten endorsements by Egan listing symptoms including nausea, fatigue, headaches, and dizziness.

Dr. Thomas V. Ryan, a clinical neuropsychologist, testified for Honsinger that Egan's symptoms could have been the result of one of many different physiological events including previous psychological problems, brain damage from unstable diabetes, or a mild traumatic brain injury.  Dr. Ryan opined that Egan could be presenting these symptoms as a form of "secondary gain,"[*] with Egan focusing on her physical symptoms from the accident as a way of masking her latent psychological condition.  Using the results from a series of clinical tests conducted on Egan, Dr.

---

[*] In general terms, Dr. Ryan explained secondary gain as a continuum concept in which an individual may be faking symptoms or in fact have symptoms such as loss of memory, but exaggerate the symptoms because the individual likes attention.

Ryan expressed the opinion that she was not suffering from a mild traumatic brain injury as a result of the 1998 accident. Rather, he testified that it was more likely that the constellation of her symptoms was brought on by one of the other causes.

Dr. Bruce Smoller, a psychiatrist, also testified for Honsinger and concurred with Dr. Ryan that Egan's condition was not the result of injuries sustained in the 1998 accident. In Dr. Smoller's opinion, Egan suffered from a form of bipolar disorder.

Counsel for both parties proffered jury instructions to the trial court in preparation for submitting the case to the jury. The trial court granted instructions advising the jury that Egan had the burden to prove by a preponderance of the evidence that Honsinger was negligent and that her negligence proximately caused the 1998 accident and the injuries Egan claimed to have suffered as a result. The trial court also granted a limiting instruction on the subject of aggravation of a pre-existing condition.

In addition to these instructions, Honsinger proffered two other instructions that are at issue here. She contended in the trial court that either of these instructions was consistent with her theory of the case or "two causes" defense and were meant to guide the jury when the evidence was in "equipoise" for

4

the causes of Egan's asserted injuries.  The first of the two

instructions, Instruction R, stated:

> Damages are not presumed nor may they be based
> upon speculation, but must be proven; and the burden
> is upon the plaintiff to prove by a preponderance of
> the evidence each item and element of damage claimed.
> Unless such item or element thus claimed is proven by
> a preponderance of the evidence, the plaintiff cannot
> recover therefor.

> If you are uncertain as to whether any particular
> element of damage claimed was caused by the collision,
> or if it appears just as probable that any injury or
> element of damage complained of resulted from a cause
> other than the collision as that it did, then the
> plaintiff cannot recover therefor.

The second instruction, Instruction S, stated:

> Damages are not presumed nor may they be based
> upon speculation, but must be proven; and the burden
> is upon the plaintiff to prove by a preponderance of
> the evidence and with reasonable certainty any item or
> element of damage claimed and that it is properly
> attributable to the accident; and unless such item or
> element of damage is thus proven by a preponderance of
> the evidence and with reasonable certainty, then the
> plaintiff cannot recover for such item or element.

> If you believe from the evidence that a
> particular injury complained of by the plaintiff may
> have resulted from either of two causes, for one of
> which the defendant might have been responsible and
> for the other of which she was not, and if you are
> unable to determine which of the two causes occasioned
> the injury complained of, then the plaintiff cannot
> recover therefor.

Egan objected to both instructions.  She contended that the

language used imposed an improper burden of proof on her because

it required that she prove causation of her injuries and damages

5

with some degree of certainty, rather than by a preponderance of the evidence. She also argued that the instructions were cumulative of the burden of proof instructions already granted and that they would confuse the jury.

The trial court refused both Instructions R and S. It reasoned, in part, that both instructions were deficient, duplicative of other instructions already approved, and would confuse the jury. While refusing these instructions, the trial court stated, however, that Honsinger would be permitted to assert her "two causes" theory of the case to the jury under the other granted instructions. In her closing argument, Honsinger contended that Egan's injuries were not caused by the accident but, rather, by one or more of the other potential causes identified by Honsinger's experts.

The jury returned its verdict for Egan, awarding her damages in the amount of $500,000. The trial court denied Honsinger's motion to set aside the verdict and for a new trial and entered judgment on the jury's verdict. We awarded Honsinger this appeal, limited to the issue whether the trial court erred in failing to grant Instruction R or Instruction S.

DISCUSSION

Our resolution of this appeal is guided by well-established principles. In reviewing a trial court's refusal to grant a proffered jury instruction, we examine the evidence in the light

6

most favorable to the proponent of the instruction. Commonwealth v. Vaughn, 263 Va. 31, 33, 557 S.E.2d 220, 221 (2002); Blondel v. Hays, 241 Va. 467, 469, 403 S.E.2d 340, 341 (1991).

The purpose of jury instructions "is to fully and fairly inform the jury as to the law of the case applicable to the particular facts, and not to confuse them." H. W. Miller Trucking Co. v. Flood, 203 Va. 934, 936, 128 S.E.2d 437, 439 (1962); see also Southers v. Price, 211 Va. 469, 473, 178 S.E.2d 685, 688 (1971). "Instructions are meant to aid the jury in its deliberations, not to make such deliberations more difficult." Gaalaas v. Morrison, 233 Va. 148, 156, 353 S.E.2d 898, 902 (1987). Consequently, we will approve a trial court's decision not to give an instruction that is duplicative of instructions already given. See, e.g., Poliquin v. Daniels, 254 Va. 51, 59, 486 S.E.2d 530, 535 (1997); Cox v. Mabe, 214 Va. 705, 709, 204 S.E.2d 253, 257 (1974).

It is axiomatic that a party is entitled to have jury instructions that address his or her theory of the case so long as that theory is supported both by law and fact. Price v. Taylor, 251 Va. 82, 85, 466 S.E.2d 87, 88 (1996); Bowers v. May, 233 Va. 411, 413-14, 357 S.E.2d 29, 30 (1987). In the present case, the jury could have concluded from the evidence produced by Honsinger that Egan's alleged injuries arose from some other

7

cause unrelated to the trauma of the 1998 accident. Accordingly, and citing Mastin v. Theirjung, 238 Va. 434, 384 S.E.2d 86 (1989), Honsinger contends that she was entitled to have either Instruction R or Instruction S given to the jury. Honsinger's reliance on Mastin, however, is misplaced in the procedural context in which the jury instructions issue arose in this case. For the reasons that follow, we are unable to reach Honsinger's primary contention that she was entitled to a specific instruction addressing the jury's resolution of the causes of Egan's alleged injuries in addition to or distinct from the other instructions requiring Egan to prove her injuries and damages by a preponderance of the evidence standard.

In a civil trial, the burden is on the parties to furnish the trial court with proper and appropriate instructions that address their respective theories of the case. However, when a proffered instruction is not a correct statement of the law or is not supported by the evidence in the case, the trial court is not required to correct or amend the instruction rather than refusing to grant it. Peele v. Bright, 119 Va. 182, 184, 89 S.E. 238, 239 (1916). But cf. Whaley v. Commonwealth, 214 Va. 353, 355-56, 200 S.E.2d 556, 558 (1973) (holding that in a criminal trial the trial court must correct or amend an improper instruction if the proper instruction is necessary for the jury to understand the case). In the present case, Honsinger did not

8

request the trial court to modify either Instruction R or Instruction S and, moreover, she did not proffer an alternative instruction after the trial court indicated that neither instruction was a correct statement of the law.  In that procedural context, we must address these instructions as they were proffered.  And while the recited language from the portion of the instruction at issue in Mastin is identical to the language of the second paragraph of Instruction S, 238 Va. at 439, 384 S.E.2d at 89, we did not expressly approve that language there and do not do so here.

We turn now to consider Honsinger's instructions as proffered to the trial court.  Instruction R is, at best, confusing and, at worst, not a correct statement of law because it would have required the jury to find for Honsinger if the jury were "uncertain" of the causation of Egan's injuries, implying that Egan was required to prove her case with "certainty."  However, we have held that "[p]roximate cause need not be established 'with such certainty as to exclude every other possible conclusion.' " Wooldridge v. Echelon Service Company, 243 Va. 458, 461, 416 S.E.2d 441, 443 (1992) (quoting Northern Virginia Power Co. v. Bailey, 194 Va. 464, 471, 73 S.E.2d 425, 429 (1952)).  Even when, as here, the defendant asserts the possibility of another cause for the plaintiff's injuries, the plaintiff's burden remains that of proving by a

preponderance of the evidence that the defendant's acts were a proximate cause of the plaintiff's injuries.  <u>Norfolk & Western Railway Co. v. Poole's Adm'r</u>, 100 Va. 148, 154, 40 S.E. 627, 629 (1902).  Accordingly, we hold that the trial court did not err in refusing to give Instruction R.

Similarly, the use of the phrase "reasonable certainty" in Instruction S renders that instruction either confusing or an incorrect statement of law in that it would appear to impose upon Egan a burden greater than that of proving her case by a preponderance of the evidence.  Accordingly, we hold that the trial court did not err in refusing to give Instruction S.

CONCLUSION

For these reasons, the judgment in favor of Egan will be affirmed.

<u>Affirmed</u>.