**VIRGINIA:**

In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond, on Thursday, the 4th day of June, 2015.

Glen Cosby,                                                       Appellant,

  against       Record No. 141096
                Circuit Court No. CL10-1534

Susan Clem,                                                       Appellee.

Upon an appeal from a judgment rendered by the Circuit Court of Spotsylvania County.

Upon consideration of the record, briefs, and argument of counsel, the Court is of opinion that the circuit court erred in setting aside the verdict rendered by the jury on June 5, 2012, in the amount of $9,000.  Therefore, we will reverse the judgment of the circuit court, reinstate the jury verdict, and enter final judgment on the verdict.

Susan Clem ("Clem") filed a complaint in the circuit court seeking judgment against Glen Cosby ("Cosby") for damages arising from a vehicle accident that occurred on January 11, 2009, when the vehicle being operated by Cosby collided with the rear of the vehicle in which Clem was riding as a passenger.  Cosby admitted liability and the case was tried before a jury on the issue of damages.  Clem claimed that the accident caused her previously implanted spinal cord stimulator to malfunction and submitted evidence of medical bills in the amount of $188,513.08.  After the jury awarded damages to Clem in the amount of $9,000, the circuit

court granted Clem's motion to set aside the verdict and for additur in the amount of $188,513.08, for a total award of $197,513.08.  Upon Cosby's election declining to accept the additur award pursuant to Code § 8.01-383.1(B), the circuit court awarded Clem a new trial.[1]  On appeal, Cosby contends the circuit court erred in setting aside the jury verdict and awarding additur.

Upon review of a circuit court's decision setting aside a jury verdict, we will reinstate the verdict and enter judgment thereon if there is any credible evidence in the record that supports the verdict.  McGuire v. Hodges, 273 Va. 199, 205, 639 S.E.2d 284, 288 (2007); Hoar v. Great Eastern Resort Mgmt., 256 Va. 374, 378, 506 S.E.2d 777, 778 (1998).  "When 'reasonably fairminded [persons] may differ as to the conclusions of fact to be drawn from the evidence, or if the conclusion is dependent upon the weight to be given the testimony,' then such evidence is controverted, and the jury's

---

[1] When the matter was tried before a jury the second time, the jury awarded damages to Clem in the amount of $1,766.25, the exact amount of the bill for the treatment rendered to her in the emergency room on the date of the accident.  The circuit court granted Clem's motion to set aside the verdict and for additur in the amount of $188,513.08, which Cosby elected to accept under protest pursuant to Code § 8.01-383.1(B).  Progressive Gulf Insurance Company, an underinsured motorist carrier, filed a motion for a new trial in which it asserted an independent right to decline the additur award.  Upon consideration of the motion, the circuit court ordered a new trial.  When the matter was tried before a jury the third time, the circuit court granted Clem's motion for partial summary judgment as to damages in the amount of $176,814.98.  The jury was informed that Clem had proven her medical damages of $176,814.98 and instructed to determine any additional amount that should be awarded.  The jury awarded damages to Clem in the amount of $6,000 and the circuit court entered judgment for Clem in the amount of $182,814.98.

verdict cannot be disturbed either by the circuit court or this Court." Hundley v. Osborne, 256 Va. 173, 178-79, 500 S.E.2d 810, 813 (1998) (quoting Hall v. Hall, 240 Va. 360, 363, 397 S.E.2d 829, 831 (1990)).

Although Clem contends that the accident caused her implanted spinal cord stimulator to malfunction, the evidence was controverted as to whether the stimulator was functioning properly prior to the accident. The evidence proved that Clem had an extensive history of back pain arising from a back injury she sustained in 1999. Clem underwent several back surgeries including one in 2003 in which a stimulator was implanted in her spinal cord and another in 2004 to improve the effectiveness of the stimulator.[2] From the time the spinal cord stimulator was implanted, Clem continued to complain of back pain, at times describing it as "unbearable" and "excruciating," and remained on narcotic pain medicine. Additionally, she repeatedly complained to her doctors that the stimulator was not working as effectively as she had hoped.

Furthermore, Clem's contention that the accident caused her stimulator to stop working was based on her own testimony regarding the functioning of the stimulator before and after the accident, which the jury was free to disregard. Clem testified that when the accident occurred, she experienced a "twinge" in her lower back

---

[2] The record in this case indicates that a spinal cord stimulator is composed of an implanted pulse generator that sends electronic pulses to the spine via a connecting cable attached to an electrode placed in the spinal canal. The patient controls the strength of the impulses with a remote programmer.

that she had not felt before.[3]  On April 15, 2009, she saw Dr. Michael J. Decker, a specialist in physical medicine and rehabilitation, and informed him that the stimulator had been working well until the date of the accident.  Upon testing the stimulator, Dr. Decker was unable to make the stimulator operate until he increased the power to the point of causing Clem significant shocks and pain.  Dr. Decker performed surgery on April 21 and determined that the electrode implanted in Clem's spinal cord was working properly.  Therefore, Dr. Decker replaced only the pulse generator and cable connecting the generator to the electrode.

While Dr. Decker testified that he believed the trauma Clem sustained in the accident caused the stimulator to malfunction, he admitted his opinion was based solely on Clem's statement to him that the stimulator was working before the accident and stopped working at the time of the accident.  He further admitted that while he initially believed that a broken or loose wire may have caused the stimulator to stop functioning, he found no such defects upon x-ray examination of Clem's spine or during her surgery.  Dr. Decker did not send that part of the stimulator he removed to the manufacturer for testing or otherwise attempt to determine why the part of the system he removed was not working.  As Clem's treating

---

[3] The parties also disputed the force of the impact.  Clem's husband, who was driving the vehicle in which she was riding, testified that the force of the impact was hard enough to break the driver's seat.  Cosby described the impact as "minimum" and compared it to a bump in a parking lot.  Cosby introduced photographs depicting the conditions of the vehicles observed by him after the accident.

physician, his primary concern was to implant a functioning stimulator rather than determine the cause of any malfunction in the previously implanted system. Thus, Dr. Decker did not identify the nature of the malfunction.

Clem had the burden to prove the damages she claimed resulted from Cosby's negligence.[4] "[W]here an impartial jury properly instructed has determined the issue of damages in a personal injury case, the verdict should not be disturbed if it is supported by a logical interpretation of the factual issues." Doe v. West, 222 Va. 440, 445, 281 S.E.2d 850, 852 (1981). Based on the evidence presented in this case, the jury was entitled to conclude that Clem failed to prove the spinal cord stimulator malfunctioned as a result of Cosby's negligence and to decline to award her damages related to the treatment associated with her stimulator. Because

---

[4] The jury was instructed:

In determining the damages to which the plaintiff, Susan Clem, is entitled, you shall consider any of the following which you believe by the greater weight of the evidence was caused by the negligence of the defendant, Glen Cosby:

(1) any bodily injuries she sustained and their effect on her health according to their degree and probable duration;
(2) any physical pain and mental anguish she suffered in the past;
(3) any disfigurement or deformity and any associated humiliation or embarrassment;
(4) any inconvenience caused in the past;
(5) any medical expenses incurred in the past.

Your verdict shall be for such sum as will fully and fairly compensate the plaintiff, Susan Clem, for the damages sustained as a result of the defendant's negligence.

Clem's medical expenses related primarily to the treatment and surgery associated with her stimulator, "[w]e cannot say that the verdict [of $9,000] was based upon an unreasonable interpretation of the evidence, which was susceptible to different findings. Under these circumstances, the trial court should not have set aside the first verdict."  Id. at 446, 281 S.E.2d at 853.[5]

For these reasons, we will reverse the judgment of the circuit court, reinstate the jury verdict in the amount of $9,000, and enter final judgment on the verdict.[6]

This order shall be certified to the said circuit court and shall be published in the Virginia Reports.

A Copy,

Teste:

Patricia L. Harrington, Clerk

---

[5] During the jury's deliberation, the jury submitted the following question to the circuit court: "How much of these expenses were actually paid out of pocket by the plaintiff?"  In response, the circuit court informed the jury it could not answer the question and instructed the jury to make a decision based upon the evidence it heard and the exhibits that were produced.  Clem asserts that "the jury's consideration of a matter not before them" was "made clear" by this question.  We disagree and will not assume that the jury deliberately ignored the instruction of the circuit court.  See Raisovich v. Giddings, 214 Va. 485, 487-88, 201 S.E.2d 606, 608 (1974).

[6] Our holding that the circuit court erred in setting aside the verdict in the first trial renders it unnecessary for us to address the remaining assignments of error.