COURT OF APPEALS OF VIRGINIA

Present: Judges Raphael, White and Senior Judge Petty
Argued at Richmond, Virginia


NEIL EVAN WOLFE

v.      Record No. 0645-22-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE KIMBERLEY SLAYTON WHITE
SEPTEMBER 19, 2023

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Melvin R. Hughes, Jr., Judge Designate

Paul McCourt Curley (Six East Law Group - Curley Law Firm,
PLLC, on briefs), for appellant.

Erika L. Maley, Principal Deputy Solicitor General (Jason S.
Miyares, Attorney General; Charles H. Slemp, III, Chief Deputy
Attorney General; M. Nicole Wittman, Deputy Attorney General;
Andrew N. Ferguson, Solicitor General; Lucas W.E. Croslow,
Deputy Solicitor General; Annie Chiang, Assistant Solicitor General,
on brief), for appellee.

Neil Evan Wolfe appeals his convictions, following a jury trial, for trespassing in violation

of Code § 18.2-119, picketing a dwelling house in violation of Code § 18.2-419, and obstructing

justice in violation of Code § 18.2-460.[1] The trial court sentenced Wolfe to a fine of $100 for

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] The grand jury indicted Wolfe for obstruction of justice "by threats or force" in violation of Code § 18.2-460(B). In its verdict, the jury found Wolfe not guilty of obstruction of justice by use of threats or force, but guilty of obstruction of justice without the use of threats or force, an apparent conviction under Code § 18.2-460(A). However, the trial court's "Misdemeanor Jury Trial Order" states the jury's verdict as one of guilt for "[o]bstruction of [j]ustice by [u]se of [t]hreats or [f]orce." Likewise, the sentencing order states that Wolfe was found guilty of obstructing justice "by [t]hreats or [f]orce." The indictments charging Wolfe alleged an offense date of May 2, 2019. Likewise, the sentencing order states that the offense date was May 2, 2019. However, all testimony presented at the jury trial as well as the pleadings filed with this court by Wolfe establish the offense date to be February 2, 2019.

each offense. On appeal, Wolfe contests his trespassing conviction on the grounds that the regulation upon which the charge was based is unconstitutional on its face and as applied. Wolfe contests his picketing conviction alleging that his conduct was lawful under an exception provided in the statute. Wolfe further assigns error to the court's acceptance of a jury instruction omitting the exception on which he relies. In defense to his obstruction conviction, Wolfe argues that he had the right to resist an unlawful arrest. He also argues that the obstruction charge for which he was convicted was in error as it did not match his indictment. For the following reasons, we disagree and affirm the convictions. We remand the case to the trial court to address clerical errors in the misdemeanor jury trial order and in the sentencing order.

BACKGROUND

I. Regulations

The regulation for use of Capitol Square in effect at the time of Wolfe's demonstration provided that "[n]o . . . assemblages or the displaying of flags, banners, or devices designed or adapted to bring into public notice any party, organization, or movement shall be permitted within Capitol Square . . . except as provided herein." 1 VAC 30-100-10(C).[2] The regulation also provided detailed instructions on how to request a permit for such demonstrations. 1 VAC 30-100-10(E). It also prescribed that "[a]ll nonstate sponsored events, without exception, will be conducted at the Bell Tower."[3] 1 VAC 30-100-10(G). It further specified that "[a]ll authorized functions are expected to be . . . during a time of day that will not interfere with major pedestrian and vehicular traffic within Capitol Square, with periods such as . . . the noon hour . . . being avoided." 1 VAC 30-100-10(H).

_____

[2] On May 25, 2022, 1 VAC 30-100-10 was repealed and replaced with regulations 1 VAC 30-100-15 through 1 VAC 30-100-90, which still require a permit for the use of Capitol Square and provide additional standards for the issuance of such.

[3] The Bell Tower is located in the western corner of Capitol Square.

## II. Trial Evidence[4]

Around noon on February 2, 2019, Capitol Police Officer Reginald Reavis was on duty in the security booth at the gate to the Governor's Mansion on Capitol Square in Richmond. From inside the enclosed booth, Officer Reavis heard the amplified broadcast of a recording Wolfe was playing outside using a sound system. Using a microphone, Wolfe "tr[ied] to get" a "group of people gathering around the Governor's Mansion" "riled up"; he played music, used his microphone to implore the crowd to ignore police requests against gathering, told the crowd to get signs, and announced that officers had no authority to prevent the crowd from doing either. Wolfe was in front of the Governor's Mansion.[5] It was estimated that 40 to 50 people had gathered at this demonstration, including some holding signs. A person with Wolfe held a sign stating "Baby KKKiller."

Officer Reavis exited the security booth and advised Wolfe that the regulations of Capitol Square required him to have a permit to display a banner or use amplification equipment there. Wolfe did not have such a permit. Officer Reavis advised that Wolfe could air his grievances at the Patrick Henry Building nearby, where the Governor's office was located, and pointed out that building's location.[6] Officer Reavis told Wolfe to leave; Wolfe refused and asked to speak to a higher ranking officer. At some point, Wolfe's sound system stopped working.

---

[4] On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

[5] The Governor's Mansion is located in the eastern corner of Capitol Square.

[6] The Patrick Henry Building is located just outside of Capitol Square.

After First Sergeant Michael Flick, Sergeant Stamm, and Lieutenant Duncan arrived on the scene, First Sergeant Flick also commanded Wolfe to leave.[7]  First Sergeant Flick used his cell phone to show Wolfe the applicable regulation requiring a permit for using a banner or amplification equipment at that site.  Wolfe again refused to leave and said that he would not leave Capitol Square unless he was arrested.  He took the "Baby KKKiller" sign from his companion.  Officer Reavis attempted to issue Wolfe a uniform summons but he refused to accept it.  Wolfe said, "[I]f we're going to do it, we're going to do it all the way."  Wolfe later explained that he was protesting Governor Northam's "advocating . . . murdering children . . . after they were born due to medical complications" and "mocking Governor Northam for the racist incident, the black face incident, KKK."

Officer Reavis took Wolfe before a magistrate, who issued a warrant for trespassing.  The officers attempted to "process" Wolfe at the Richmond City Jail, but he refused to have his "vitals checked" as required for entry at the jail.  Due to Wolfe's repeated refusals to cooperate, Officer Reavis and Sergeant David Sandoval took Wolfe to VCU Medical Center.

At the hospital, Wolfe refused to get out of the backseat of the car.  After lifting Wolfe from the car, Officer Reavis and Sergeant Sandoval tried to support Wolfe's weight and move him toward the entrance of the facility.  As Sergeant Sandoval stepped forward, Wolfe wrapped his right leg around the officer's left leg; the officer had to move his leg to prevent falling.  The officers moved Wolfe into the medical facility with a wheelchair as he refused to walk.  Inside, Wolfe denied medical staff the opportunity to check his vitals.  The officers later arranged to have Wolfe held in the Henrico County jail.

---

[7] Neither Sergeant Stamm's nor Lieutenant Duncan's first name appears in the record.

III.  Procedural History

Wolfe was charged with three misdemeanors: trespassing in violation of Code § 18.2-119, unlawful "picketing of a residence" in violation of Code § 18.2-419, and obstruction of justice, by threats or force, in violation of Code § 18.2-460(B).

For the first time in his motion to strike the evidence, Wolfe argued that the regulation limiting protests without a permit in Capitol Square was unconstitutional as violative of his right to free speech under the First Amendment.  The trial court later denied the motion, noting that Wolfe should have raised his argument before trial and that the motion came late.

Wolfe argued that the trial court should include in the jury instruction for the picketing offense the statutory exception that picketing was not prohibited on "premises commonly used for the discussion of subjects of general public interest."  Wolfe did not proffer a proposed jury instruction to that effect, and the trial court granted the jury instruction on picketing that was drafted by the Commonwealth.  The jury found Wolfe guilty of trespassing and unlawful picketing, as charged, and of obstruction of justice, but without threats or force.

During and after trial, Wolfe repeatedly moved to strike the charges and, after being convicted, also moved to set aside the verdicts.  In his motion to set aside the verdicts, Wolfe again asserted his argument that the regulation on the permit requirement was unconstitutional as giving government officials "unfettered discretion to regulate speech."  He contended that the picketing charge failed because his conduct occurred in a place "commonly used for the discussion of subjects of general public interest," as exempted by Code § 18.2-419, the picketing statute.  In addition, he contended that the obstruction conviction should fail because he was entitled to resist the allegedly unlawful arrest.  The trial court denied Wolfe's motion to set aside the verdicts.

Wolfe was sentenced to a $100 fine on each charge.  This appeal follows.

## ANALYSIS

### I. Trespassing

In his first assignment of error, Wolfe asserts that the trial court erred in denying his motions to strike and motion to set aside his trespassing conviction on the basis that 1 VAC 30-100-10(C) was unconstitutional on its face and as applied to him in the resulting trespassing conviction. Wolfe also contends that he was not in violation of 1 VAC 30-100-10. We do not reach the constitutional challenge as this argument was not properly presented to the trial court, nor do we reach whether Wolfe was in violation of 1 VAC 30-100-10 as it was not briefed.

This Court reviews de novo "questions of statutory and constitutional interpretation." *Palmer v. Atl. Coast Pipeline, LLC*, 293 Va. 573, 577 (2017) (quoting *L.F. v. Breit*, 285 Va. 163, 176 (2013)). We also "review compliance with statutes and this Court's Rules de novo." *Epps v. Commonwealth*, 293 Va. 403, 407 (2017).

### A. Rule 3A:9 Waiver

Wolfe argues that the only statute that could be interpreted to preclude his constitutional challenge is Code § 19.2-266.2, which according to him only requires prior notice of a constitutional challenge to the "charging statute" (here, trespassing under Code § 18.2-119). *See Williams v. Commonwealth*, 57 Va. App. 750, 768 n.4 (2011). Wolfe clarified that he does not seek the "dismissal of a warrant, information, or indictment or any count or charge thereof on the ground that a *statute* upon which it was based is unconstitutional." Code § 19.2-266.2(A)(iii) (emphasis added). Instead, Wolfe explains that he is challenging the constitutionality of an administrative regulation, and therefore the requirement in Code § 19.2-266.2 does not apply. The trial court rejected this argument, finding that Wolfe's constitutional argument was instead waived for his failure to comply with Rule 3A:9 of the Rules of the Supreme Court of Virginia. We agree.

Rule 3A:9(b)(1) states in pertinent part:

> Defenses and objections based on defects in the institution of the prosecution or in the written charge upon which the accused is to be tried, other than that it fails to show jurisdiction in the court or to charge an offense, must be raised by motion made within the time prescribed by paragraph (c) of this Rule. The motion must include all such defenses and objections then available to the accused. Failure to present any such defense or objection as herein provided constitutes a waiver thereof.

Paragraph (c) mandates that a motion referred to above "must be filed or made before a plea is entered and, in a circuit court, at least 7 days before the day fixed for trial." Rule 3A:9(c). Therefore, the requirement is mandatory. The rule also provides the caveat that the court may grant relief from any waiver provided in the rule for "good cause" shown. Rule 3A:9(d). However, Wolfe did not request relief from the waiver at trial.

Because Wolfe did not comply with the notice provisions of Rule 3A:9 and did not show "good cause" as to why he did not, and did not request relief from the trial court, he waived any "[d]efense[] [or] objection[] based on defects in the institution of the prosecution or in the written charge upon which [he was] to be tried," including any defense or objection pursuant to the First Amendment.

*B. Rule 5A:20 Waiver*

Rule 5A:20(e) requires that the appellant include in his opening brief principles of law and authorities that relate to each assignment of error. Roped in at the end of Wolfe's lengthy assignment of error, he contests that he was even in violation of the administrative regulation prompting his arrest for trespassing. However, nowhere in Wolfe's briefs can an argument be found as to why he was not in violation of 1 VAC 30-100-10. Therefore, we will not consider it. *See* Rule 5A:20(e).

We agree with the trial court that Wolfe's constitutional challenge is waived. Further, we find that Wolfe failed to properly set forth an argument on appeal that his conduct did not violate

- 7 -

the administrative code. We therefore conclude that the court did not err in denying Wolfe's motions to strike and his motion to set aside his trespassing conviction.

## II. Picketing

### A. *The argued exception in Code § 18.2-419 does not apply to Wolfe's conduct.*

Wolfe contests his conviction for picketing on the grounds that his demonstration was lawful under an exception in the code section. We disagree. "With respect to issues arising from the trial court's interpretation of a statute, we apply a *de novo* standard of review." *Lopez v. Commonwealth*, 73 Va. App. 70, 77 (2021). We also "review compliance with statutes and this Court's Rules de novo." *Epps*, 293 Va. at 407. When reviewing the trial court's application of the law to the facts, "[w]e give deference to the trial court's factual findings and view the facts in the light most favorable to . . . the prevailing part[y] below." *Kim v. Commonwealth*, 293 Va. 304, 311 (2017) (alterations in original) (quoting *Caplan v. Bogard*, 264 Va. 219, 225 (2002)).

Code § 18.2-419 provides that no person "shall engage in picketing before or about the residence or dwelling place of any individual" nor "assemble with another person or persons in a manner which disrupts or threatens to disrupt any individual's right to tranquility in his home." The exceptions listed in Code § 18.2-419 provide:

> Nothing herein shall be deemed to prohibit (1) the picketing in any lawful manner, during a labor dispute, of the place of employment involved in such labor dispute; (2) the picketing in any lawful manner of a construction site; or (3) the holding of a meeting or assembly on any premises commonly used for the discussion of subjects of general public interest.

Wolfe relies on exception (3) on the basis that Capitol Square is "commonly used for the discussion of subjects of general public interest." Op. Br. 19 (quoting Code § 18.2-419).

Under the principle of statutory construction of expressio unius est exclusio alterius, "the mention of specific items in a statute implies that all terms omitted were not intended to be included." *Va. Dep't of Health v. NRV Real Est., LLC*, 278 Va. 181, 188 (2009). "[T]he plain,

obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction." *Meeks v. Commonwealth*, 274 Va. 798, 802 (2007) (quoting *Commonwealth v. Zamani*, 256 Va. 391, 395 (1998)). The exceptions above, although listed together, are distinct. Exceptions (1) and (2) specifically mention lawful "picketing" when used in labor disputes or of a construction site. Exception (3) regarding assembly in a public forum notably omits the term "picketing" despite it being used in exceptions (1) and (2) within the same sentence. Therefore, we must conclude that exception (3) does not apply to picketing, but only "the holding of a meeting or assembly."

Wolfe used sound amplification equipment and signs to air a message associated with the anti-abortion movement directed at Governor Northam in front of the Governor's Mansion. He also used a microphone to encourage a crowd to gather. Wolfe's broadcasts were heard inside a closed guard shack at the Governor's Mansion gate, and his protest instigated a crowd of 40-50 to amass despite law enforcement's commands. Wolfe was convicted of picketing a dwelling, not for holding an unlawful meeting or assembly.

Additionally, regulations in place at the time specifically governed the time, place, and manner in which Capitol Square may be "used for the discussion of subjects of general public interest." Those regulations provided that no "assemblages or the displaying of flags, banners, or devices designed or adapted to bring into public notice any party, organization, or movement shall be permitted within Capitol Square" without a permit or prior written authorization. 1 VAC 30-100-10. Wolfe never requested a permit for his demonstration in Capitol Square, nor did he receive any written authorization.

Accordingly, Wolfe's demonstration was unlawful and he was further prohibited from using such to picket the Governor's Mansion under Code § 18.2-419. The Code's exception did not

excuse his conduct. We thus find that the trial court did not err in denying Wolfe's motions to strike, nor did it err in upholding his picketing conviction.

B. *The court did not abuse its discretion in admitting the Commonwealth's jury instruction.*

Wolfe assigns error to the Commonwealth's jury instruction on picketing. He argues that the instruction must encompass the entire statute, including the exceptions. Wolfe did not provide an alternative instruction when instructed by the court to do so, nor did he argue with specificity which omitted elements were relevant. We ultimately find that the court did not err due to the exceptions' inapplicability to the facts of the case as explained above.

The jury was only instructed on the charge of picketing a residence, not an assembly threatening to disrupt an individual's right to tranquility in his home. It reads in pertinent part:

> The defendant is charged with the crime of picketing of a residence. The Commonwealth must prove beyond a reasonable doubt that the defendant engaged in picketing before or about the residence or dwelling place of any individual.
>
> If you find from the evidence that the Commonwealth has proved this beyond a reasonable doubt, then you shall find the defendant guilty of picketing of a residence . . . .

Jury Instr. 3.

"As a general rule, the matter of granting and denying [jury] instructions . . . rest[s] in the sound discretion of the trial court." *Dandridge v. Commonwealth*, 72 Va. App. 669, 679 (2021) (second and third alterations in original) (quoting *Lienau v. Commonwealth*, 69 Va. App. 254, 264 (2018)). "A trial court's decision whether to grant or refuse a proposed jury instruction is generally subject to appellate review for abuse of discretion." *Howsare v. Commonwealth*, 293 Va. 439, 443 (2017). This Court's objective in reviewing jury instructions is "to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." *Dorman v. State Indus., Inc.*, 292 Va. 111, 125 (2016) (quoting *Cain v. Lee*, 290 Va. 129, 134 (2015)). "[W]hether a jury instruction accurately states the relevant law is a question of law that

we review de novo.  However, jury instructions are proper only if supported by the evidence, and more than a scintilla of evidence is required." *Watson v. Commonwealth*, 298 Va. 197, 207 (2019) (quoting *Payne v. Commonwealth*, 292 Va. 855, 869 (2016)).

Wolfe's objection to the Commonwealth's jury instruction is that without the entire statute, including the exceptions, the jury was not properly instructed on the law.  Yet, Wolfe did not state, with specificity, what parts of the statute were relevant to the case.  In fact, while he relied on one of the code exceptions, there were two others, not relevant to this case, set forth in the Code.  Rule 5A:18 requires that "a specific argument must be made to the trial court at the appropriate time, or the allegation of error will not be considered on appeal." *Edwards v. Commonwealth*, 41 Va. App. 752, 760 (2003) (en banc).  Additionally, the judge instructed him to provide an alternative instruction in line with his objection, on numerous occasions, but Wolfe failed to do so.  Without being provided an alternative, the court accepted the picketing instruction as provided by the Commonwealth.

While a party is generally entitled to a jury instruction commensurate with their theory of the case, that is only the case provided such theory is supported by law and fact.  *See Honsinger v. Egan*, 266 Va. 269, 274-75 (2003); *Woolridge v. Commonwealth*, 29 Va. App. 339, 348 (1999).  Without considering whether this issue was waived, we find above that the exceptions Wolfe requested to be a part of the instruction do not apply to the facts of the case.  We have concluded that the relied-upon exception does not apply to Wolfe's picketing conviction.  Wolfe never argued that any of the other exceptions set forth in the statute applied.  Therefore, the exceptions' inclusion in the jury instruction is neither required nor relevant, potentially even having the effect to confuse the jury.  "It is a fundamental principle that '[a]lthough an instruction may correctly state the law, it should not be given if it is inapplicable to the facts in evidence . . . [and] might confuse or distract the jury.'" *Fahringer v. Commonwealth*, 70

Va. App. 208, 218 (2019) (alterations in original) (quoting *Morse v. Commonwealth*, 17 Va. App. 627, 633 (1994)). The trial court holds the discretion to remove duplicative jury instructions and to remove those not supported by evidence. *Watson*, 298 Va. at 207 ("Nevertheless, a court may exercise its discretion and properly exclude an instruction that both correctly states the law and is supported by the evidence when other granted instructions fully and fairly cover the relevant principle of law." (quoting *Payne*, 292 Va. at 869)). Accordingly, the court did not abuse its discretion in granting the Commonwealth's jury instruction on the picketing charge.

### III. Obstruction

In his final assignment of error, Wolfe contests the basis for his obstruction conviction on the grounds that he had the right to resist an unlawful arrest and that the trial court erred in convicting him under Code § 18.2-460(A) when he was indicted under Code § 18.2-460(B). In fact, the trial court did convict him under Code § 18.2-460(B), but it did so erroneously as the jury found him guilty under Code § 18.2-460(A).

### A. Right to Resist

Wolfe contends that he had the common law right to resist an unlawful arrest. "[W]hen the issues are the lawfulness of an arrest and the reasonableness of force used to resist an unlawful arrest, the ultimate questions involve law and fact and are reviewed *de novo* on appeal." *Brown v. City of Danville*, 44 Va. App. 586, 603 (2004) (quoting *Brown v. Commonwealth*, 27 Va. App. 111, 117 (1998)).

"Under the common law, a citizen generally is permitted to use reasonable force to resist an illegal arrest." *Commonwealth v. Hill*, 264 Va. 541, 546 (2002). "The underlying rationale supporting this common law right is the 'provocation' of an illegal arrest, which operates to excuse an assault directed at thwarting the unlawful arrest." *Id.* at 547. "An unlawful arrest was

considered a great provocation at common law because of the dire consequences, including incarceration of extreme duration, which often resulted before an accused was permitted a trial for the charged offense." *Id.* However, "to the extent a suspect exercises his right to resist an unlawful arrest, he gambles that the facts and circumstances viewed objectively *from the officer's perspective* will not support a finding of probable cause." *Doscoli v. Commonwealth*, 66 Va. App. 419, 426 (2016).

"While a person is entitled to use reasonable force to resist an unlawful arrest, he is not entitled to resist a lawful arrest." *McCracken v. Commonwealth*, 39 Va. App. 254, 262 (2002). Additionally, a "lawful arrest, when made with unlawful force, may be resisted." *Id.*

Here, Wolfe was arrested for misdemeanor trespassing in Capitol Square. After refusing to allow his vitals to be taken, and refusing to exit the police cruiser, Wolfe had to be lifted out of the cruiser and walked to the hospital by two officers. As the officers were trying to walk Wolfe to the hospital for his vitals to be checked, Wolfe wrapped his leg around Sergeant Sandoval's leg in an apparent attempt to prevent his progress. Sergeant Sandoval had to move to avoid all three of them from falling, impeding their duty to get Wolfe's vitals checked before booking.

The officers' arrest of Wolfe was lawful. Wolfe lacked permission under the regulation to picket outside the Governor's Mansion. He thus violated the trespassing and picketing statutes "in the presence of the [arresting] officer[s]." Code 19.2-81(A)(11), (B). Wolfe does not contend that law enforcement used excessive force in making his arrest. Therefore, Wolfe did not have a right to resist a lawful arrest, and his conviction for obstruction was valid.[8]

---

[8] Wolfe does not contest the sufficiency of the evidence of the obstruction charge on appeal, therefore we do not consider it. *See* Rule 5A:18

*B. Wolfe failed to object to the instructions and the verdict form on obstruction.*

Wolfe raises error regarding his obstruction conviction for the first time on appeal. He argues on appeal that he could not have been convicted of obstruction without threats or force in violation of Code § 18.2-460(A) when he was indicted for obstruction with threats or force in violation of Code § 18.2-460(B). His argument should have been made at trial. Wolfe claims that he did not have the opportunity to object to the possibility of being convicted of Code § 18.2-460(A) instead of Code § 18.2-460(B) at trial. However, Wolfe did not object to Jury Instruction 4 which stated:

> If you find that the Commonwealth has proved beyond a reasonable doubt that the defendant knowingly attempted to impede a law enforcement officer while the law enforcement officer was lawfully engaged in duties as a law enforcement officer, but find that the Commonwealth has failed to prove that this was done by use of threats or force, then you shall find the defendant guilty of obstruction of justice without use of threats or force.

Wolfe also did not object to the jury verdict form which provided the jury the option to convict of either obstruction by use of threats or force OR obstruction without use of threats or force. To preserve an error for appeal, Rule 5A:18 requires that an objection be "stated with reasonable certainty at the time of the ruling," otherwise it is waived. This provides the trial court the "opportunity to intelligently address, examine, and resolve issues in the trial court, thus avoiding unnecessary appeals." *Pergolizzi v. Bowman*, 76 Va. App. 310, 335-36 (2022) (quoting *Friedman v. Smith*, 68 Va. App. 529, 544 (2018)).

Procedurally however, "[a]n accused cannot be convicted of a crime that has not been charged, unless the crime is a lesser-included offense of the crime charged." *Mackey v. Commonwealth*, 74 Va. App. 348, 354 (2022) (quoting *Bowden v. Commonwealth*, 52 Va. App. 673, 675-76 (2008)). "An offense is not a lesser-included offense of a charged offense unless *all* its elements are included in the offense charged." *Id*. at 356 (quoting *Commonwealth v. Dalton*,

- 14 -

259 Va. 249, 253 (2000)).  Being that Code § 18.2-460(B) includes all of the same elements as Code § 18.2-460(A) with the additional element of "by threats or force," Code § 18.2-460(A) thus qualifies as a lesser-included offense of Code § 18.2-460(B).

### C.  We remand to correct a clerical error.

A remand is appropriate in this case for the sole purpose of permitting the trial court to amend the conviction to accurately reflect the jury's verdict under Code § 18.2-460(A), instead of Code § 18.2-460(B).  Such error appears to be a clerical mistake.

> Clerical mistakes in all judgments or other parts of the record and errors therein arising from oversight or from an inadvertent omission may be corrected by the court at any time on its own initiative or upon the motion of any party and after such notice, as the court may order.  During the pendency of an appeal, such mistakes may be corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending such mistakes may be corrected with leave of the appellate court.

Code § 8.01-428(B).

Clerical errors cause the court's record to fail to "speak the truth."  *State Farm Mut. Auto. Ins. Co. v. Remley*, 270 Va. 209, 221 (2005).  Such mistakes or omissions must be apparent from the record.  *Hart v. Hart*, 35 Va. App. 221, 230 (2001).

Here, the jury was given the option on the jury verdict form to convict Wolfe of either obstruction of justice by use of threats or force (Code § 18.2-460(B)) or obstruction of justice without use of threats or force (Code § 18.2-460(A)).  The jury found him guilty of violating Code § 18.2-460(A) and clarified such when asked by the judge.  However, the misdemeanor jury trial order and sentencing order show a conviction under Code § 18.2-460(B).  At oral argument the Commonwealth agreed that the inconsistency appears to be a "typographical error" and does not object to a remand to address such.  Therefore, the error plainly appears to be a clerical mistake and thus the case will be remanded back to the trial court to properly reflect the conviction selected in the jury verdict form.

In addition, the evidence presented at trial by both the Commonwealth and Wolfe was that the offense date was February 2, 2019. However, the jury trial order and sentencing order show an offense date of May 2, 2019. Likewise, this error plainly appears to be a clerical mistake and upon remand should be corrected to properly reflect the offense date.

CONCLUSION

For the reasons stated above, we affirm the rulings of the trial court and the convictions of Wolfe for trespassing, picketing, and misdemeanor obstruction. The case, however, will be remanded to the trial court to correct the misdemeanor jury trial order and the sentencing order to align Wolfe's conviction with the jury's verdict.

*Affirmed and remanded.*