COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Malveaux and Fulton
Argued at Fredericksburg, Virginia

UNPUBLISHED

SHEA CURTIS, ADMINISTRATOR OF THE
  ESTATE OF MARY JO CURTIS

                                                    MEMORANDUM OPINION[*] BY
v.      Record No. 1154-22-4                        JUDGE JUNIUS P. FULTON, III
                                                    SEPTEMBER 5, 2023

CHRISTOPHER HIGHFILL, M.D.

                FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                            Petula C. Metzler, Judge

              Alfred A. Clarke (Patrick A. Malone; Patrick Malone & Associates,
              P.C., on brief), for appellant.

              (Rodney S. Dillman; Julie C. Mayer; Nicholas J.N. Stamatis;
              Hancock, Daniel & Johnson, P.C., on brief), for appellee. Appellee
              submitting on brief.


        This case arises out of the wrongful death of Mary Jo Curtis and the jury trial which was

limited to the issue of punitive damages, compensatory damages having already been awarded by a

previous jury. Shea Curtis, as the administrator of the estate of Mary Jo Curtis (the

"administrator"), appeals a jury verdict denying her claim for punitive damages against

Dr. Christopher Highfill. On appeal, she contends that the trial court erred by admitting into

evidence a letter Dr. Highfill prepared in connection with a Board of Medicine investigation and

allowing him to reference that letter during his closing argument. The administrator also

contends that the trial court erred by informing the jury that she had previously received an

award of compensatory damages against Dr. Highfill for Mary Jo Curtis' death. For the

following reasons, we affirm the judgment of the trial court.

_____

        [*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND

"When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." *Nielsen v. Nielsen*, 73 Va. App. 370, 377 (2021) (quoting *Congdon v. Congdon*, 40 Va. App. 255, 258 (2003)). As Dr. Highfill was the prevailing party below, we view the evidence in the light most favorable to him.

The origin of this case dates back to March 6, 2011, when Mary Jo Curtis fell down a set of stairs and fractured her left ankle. Dr. Highfill surgically realigned Curtis' ankle and stabilized it with a metal plate and screws. On July 6, 2011, Dr. Highfill determined that the screws in Curtis' ankle were loose and recommended further surgery, which he performed on September 2, 2011. On November 16, 2012, Dr. Highfill surgically removed the "hardware" from Curtis' ankle and performed an arthroscopy. Dr. Highfill provided follow up care to Curtis until her last office visit on April 23, 2013.

Following her first surgery on March 6, 2011, Dr. Highfill prescribed Curtis with Percocet, an opioid and narcotic medication. At the time he prescribed the medication, Dr. Highfill understood that Curtis suffered from bipolar disorder and that she was at an increased risk for addiction to and abuse of narcotic medication. Dr. Highfill never attempted to wean Curtis from the medication and continued to prescribe her with Percocet until she died from a drug overdose in June 2014.[1]

On June 13, 2016, the administrator filed a complaint against Dr. Highfill for medical malpractice seeking to recover compensatory and punitive damages.[2] On November 20, 2017,

---

[1] Dr. Highfill continued to prescribe Curtis with Percocet during the fourteen months following her last office visit and wrote a total of 144 prescriptions for Percocet.

[2] The complaint also named Dr. Highfill's employer as a defendant. The employer was later dismissed as a party.

Dr. Highfill filed a motion *in limine* to preclude the administrator from introducing evidence or testimony regarding the Board of Medicine's investigation of his treatment of Curtis. The administrator did not oppose the motion, and, on January 19, 2018, the trial court entered an order precluding the administrator from introducing such evidence. The parties subsequently stipulated that Dr. Highfill "breached the applicable standard of care with respect to his care and treatment of" Curtis and that the "only issue for the jury to consider is whether Dr. Highfill's medical negligence was a proximate cause" of Curtis' death.

The case proceeded to trial on January 29, 2018. At the close of the administrator's case-in-chief, Dr. Highfill moved to strike the administrator's claim for punitive damages, which the trial court granted. After the conclusion of all the evidence, the jury found that Dr. Highfill's negligence was a proximate cause of Curtis' death and awarded her estate $100,000 in compensatory damages.

The Supreme Court of Virginia awarded the administrator an appeal with respect to the trial court's ruling on her claim for punitive damages. After considering the appeal, the Supreme Court held that the trial court erred by striking the administrator's claim for punitive damages and remanded the case to the trial court for a new trial limited to that claim. *See Curtis v. Highfill*, 298 Va. 499, 509 (2020).

On remand, the trial court entered an order scheduling a three-day trial on the administrator's claim for punitive damages and directed the parties to exchange exhibit lists fifteen days before trial. The scheduling order also instructed the parties to file any objections to the identified exhibits at least five days before trial and informed the parties that their failure to do so would waive their objections.[3] Among other things, Dr. Highfill's exhibit list identified Curtis'

---

[3] The scheduling order did not require the parties to file written objections with respect to relevancy.

medical records from his office as a single exhibit (collectively the "medical chart"). The administrator did not file a specific written objection to the admission of the medical chart, but "reserve[d] the right to object to the entry of any exhibit on relevance grounds."

The parties proceeded to trial on the issue of punitive damages on June 13, 2022. As a preliminary matter, both the administrator and Dr. Highfill agreed "that a stipulation be read to the jury because of the unique nature of [the] case." Each party offered a proposed stipulation to be read to the prospective jury at the outset of the trial or as part of the preliminary instructions. While both agreed that the jury should be informed of the damages awarded by a previous jury, they disagreed about the specific language the trial court should have used. Relevant to this appeal, the administrator objected to Dr. Highfill's proposed stipulation because it referred to the administrator's compensatory damage award and stated that she had been fully compensated, which the administrator argued was irrelevant and prejudicial. The administrator instead suggested that the trial court inform the jury that it "may not award any damages to compensate the [administrator] for her loss." After considering the arguments of the parties, the trial court combined elements from both proposed stipulations and informed the prospective jury as follows:

> Before this trial, the parties both presented evidence to a jury on January 29, 30, 31, and February 5 and 6, 2018. At the conclusion of the trial on February 6, 2018, a jury determined that Dr. Highfill was negligent, and his negligence was a proximate cause of Mary Jo Curtis' death. The jury awarded a verdict in favor of the plaintiff, which provides for compensatory damages, which include: any sorrow, mental anguish, and loss of solace, including society, companionship, comfort, guidance, kindly offices, and advice of the decedent, and any reasonably expected loss of services, protection, care, and assistance . . . the decedent provided to plaintiff. That verdict is not in dispute. The only issue for you to decide is whether punitive damages should be assessed against Dr. Highfill, and, if so, in what amount.[4]

---

[4] The stipulation was read to the venire and later submitted as a jury instruction over the administrator's objection. The version read aloud to the venire and the version submitted to the jury were nearly identical, though certain insubstantial words were altered. For instance, the instruction submitted to the jury contained the clause, "Plaintiff's claims for compensatory

- 4 -

At trial, Dr. Highfill stated during his opening statement that the administrator had been awarded "a monetary verdict" and that the "only issue" before the jury was whether punitive damages were "appropriate." Dr. Highfill also stated that the verdict "fairly compensate[d]" the administrator and that the verdict was "not in dispute." Following the opening statements, the administrator called Dr. Highfill as an adverse witness, who testified regarding his treatment of Curtis, the Percocet he prescribed her, and her increased risk of addiction to and abuse of Percocet. At the conclusion of the administrator's case-in-chief, Dr. Highfill moved to strike the administrator's claim for punitive damages, which the trial court denied.

Dr. Highfill similarly testified regarding his treatment of Curtis and moved to introduce the medical chart into evidence. Notably, the medical chart included a three-page letter that had not been identified by Dr. Highfill's exhibit list. Specifically, the letter, dated July 13, 2015, was Dr. Highfill's response to complaints made to the Board of Medicine regarding his treatment of Curtis (the "2015 letter"). Among other things, the 2015 letter included an apology from Dr. Highfill for Curtis' death, stated that his practice would no longer "treat any patients for longer than 6 months . . . after their last surgical procedure with chronic pain medicine," identified other doctors who prescribed medication that may have contributed to Curtis' overdose, and stated that the administrator had never "expressed any concerns" regarding Curtis' treatment.

The administrator objected "only" to the portions of the medical chart that did "not relate to Dr. Highfill's prescription of opioids." She clarified that she had no objection to the portions of the medical chart "from March of 2011 onward." Dr. Highfill responded that the administrator failed to file a written objection to the medical chart as required by the trial court's scheduling order. The trial court reviewed Dr. Highfill's exhibit list, informed the administrator that the medical chart

damages have been fully resolved," after noting that the prior verdict was not in dispute. Neither party has addressed this, and we do not view the alteration as significant.

offered by Dr. Highfill included an additional three pages that his exhibit list did not identify, and asked her if she had any objection to the admission of those three pages. The administrator responded that she had "no objection" if the pages were "records from March of 2011 onwards." The trial court then directed the administrator to "take a look at those three pages" and asked her a second time whether she had an objection to their admission, to which she responded "[b]eing left out, no." The trial court found that the administrator did not file a written objection to the medical chart and overruled her trial objection. The administrator's counsel responded that she did issue a written objection "to relevancy." The trial court overruled the administrator's objection as to relevance and admitted the medical records, including the 2015 letter, into evidence.

During her closing argument, the administrator argued that Dr. Highfill was aware of the risks and dangers of prescribing Curtis with Percocet, he recklessly prescribed the medication, and he "took zero responsibility for what he did." Dr. Highfill admitted his negligence and reminded the jury that the administrator's "claims for compensatory damages ha[d] been fully resolved." He also referred the jury to the 2015 letter for "a detailed summary of what happened and how it happened." The administrator objected and argued that the 2015 letter had not been admitted into evidence after she objected to its admission and also that the 2015 letter was statutorily inadmissible. The trial court found that the 2015 letter had been previously admitted and that both parties could address the letter during their closing arguments. Following the parties' closing arguments, the jury returned a verdict in favor of Dr. Highfill. The administrator appeals.

ANALYSIS

On appeal, the administrator contends that the trial court erred by ruling that Dr. Highfill could reference the 2015 letter during his closing argument and by informing the jury that she had been compensated for Curtis' death. For the following reasons, we affirm the judgment of the trial court.

I.  The 2015 Letter

The administrator argues that the trial court erred by allowing Dr. Highfill to reference the 2015 letter during his closing argument because the letter was not admitted into evidence.  In support of her argument, the administrator contends that she "expressly objected" to the 2015 letter "as part of a more general objection" to portions of the medical chart.

Contrary to the administrator's argument, the record shows that the trial court admitted the 2015 letter into evidence.  The administrator objected to the admission of the medical chart, which included the 2015 letter.  Initially, she objected to portions of the medical chart "that [did] not relate to Dr. Highfill's prescription of the opioids."  The trial court then inquired whether the administrator's objection pertained to "the portion of the chart from March 2011 onward," and the administrator clarified that she had no objection to those portions.  Dr. Highfill argued that the administrator waived her objection to the 2015 letter because she failed to file a written objection after receiving his exhibit list, in accordance with the trial court's scheduling order.  The administrator responded that she did issue an objection, specifically "the objection at the end of [her] written objections . . . to relevancy."  We note that this supposed "objection at the end of [her] written objections," was not actually an objection, but merely a *reservation* of the administrator's "right to object to entry of any exhibit on relevance grounds" in the future.[5]  The administrator then stated that her "only objection is that this is a relevance issue.  There's 300-plus pages to go back to the jury.  We preserve all objections to relevance.  No relevance to giving half a stack of records that don't involve Dr. Highfill."  Then, following up, the administrator further stated that she had "no objection, if those are the records from March of 2011 onwards."  The trial court again attempted to clarify the administrator's objection, asking

_____

[5] This language merely reserved the right to object, but did not, in and of itself, constitute a proper objection as it was not specific to a particular exhibit or witness's testimony.  *See* Rule 5A:18.

- 7 -

counsel for the administrator to "take a look at those three pages [the 2015 letter]. . . . You have no objection to those three pages?" Counsel for the administrator responded "Being left out, no."[6] Accepting the administrator's response, the trial court then overruled the objection, specifically clarifying that the administrator's "objection as to relevance is overruled," and admitted the medical chart, including the 2015 letter, into evidence. The administrator raised no further objections to the admissibility of the 2015 letter until after the close of the evidence, during Dr. Highfill's closing argument.

Notwithstanding the admission of the 2015 letter into evidence, the administrator argues on appeal that both Code § 54.1-2400.2(B) and the trial court's pretrial ruling on Dr. Highfill's motion *in limine* prohibited the 2015 letter from being admitted into evidence and that the letter was not relevant to the proceeding below. Dr. Highfill counters that the administrator waived her challenge to the admissibility of the 2015 letter by failing to raise a contemporaneous objection at trial. We agree with Dr. Highfill.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice."[7] Rule 5A:18. "This contemporaneous-objection requirement affords 'the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials.'" *Hammer v. Commonwealth*, 74 Va. App. 225, 236 (2022) (quoting *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015)). Furthermore, it is "well

---

[6] At oral argument, counsel for the administrator clarified that, in making this statement, he intended to convey that he believed the 2015 letter would *not* come into evidence, based on the prior ruling on the trial court on Dr. Highfill's motion *in limine*.

[7] Notably, the administrator argues on appeal that it "was not feasible" for her to discover that Dr. Highfill had included the 2015 letter with the medical chart at trial. The administrator does not invoke the "good cause" or "ends of justice" exceptions in Rule 5A:18, and "we will not sua sponte raise them on [her] behalf." *Hammer v. Commonwealth*, 74 Va. App. 225, 236 (2022) (quoting *Jones v. Commonwealth*, 293 Va. 29, 39 n.5 (2017)).

established" that a party cannot avail herself of an evidentiary objection if, "'at some other time during the trial'" she "'permitted it to be brought out by [the opposing party] without objection.'" *Stevens v. Commonwealth*, 72 Va. App. 546, 557 (2020) (alteration in original) (quoting *Burns v. Bd. of Supervisors*, 227 Va. 354, 363 (1984)).

While addressing Dr. Highfill's argument that the administrator waived her objection to the medical chart, the trial court observed that Dr. Highfill's exhibit list did not identify the 2015 letter as a part of the medical chart. The trial court twice directed the administrator to review the 2015 letter and asked if she objected to its admission. The administrator initially responded that she had "no objection" before clarifying that she did not have an objection to the 2015 letter "[b]eing left out."

The record does not show that the administrator raised any specific and timely objection with respect to the admission of the 2015 letter, nor the arguments she advances on appeal.[8] At best, it shows that the administrator requested that the 2015 letter be "left out" because it raised a "relevance issue," without further explanation. "Under settled principles, the 'same argument must have been raised, with specificity, at trial before it can be considered on appeal.'" *Pulley v. Commonwealth*, 74 Va. App. 104, 125 (2021) (quoting *Johnson v. Commonwealth*, 58 Va. App. 625, 637 (2011)). "Not just any objection will do. It must be both specific and timely—so that the trial judge would know the particular point being made in time to do something about it." *Hogle v. Commonwealth*, 75 Va. App. 743, 755 (2022) (quoting *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019)).

---

[8] As noted, the administrator's initial objection to the 2015 letter during trial was insufficient. Further, to the extent that the administrator argues that she again objected to the 2015 letter being received into evidence during closing argument, such an objection came too late, and was not timely.

The administrator did not argue at trial as she does now that Code § 54.1-2400.2(B) was a bar to the admission of the 2015 letter. Nor did the administrator argue that the trial court's ruling on Dr. Highfill's motion *in limine* prohibited the 2015 letter from being admitted into evidence. Finally, even assuming that she raised the issue of the 2015 letter's relevance generally during trial, she did not argue *how* or *why* the letter would be irrelevant to the trial. This objection therefore does not meet the specificity requirement contained in Rule 5A:18.

As the record shows that the administrator did not raise a specific objection regarding the admission of the 2015 letter, we find that the administrator waived her arguments and do not consider them on appeal.[9]

## II. References to the Compensatory Damages Award

Jury instructions "should be pertinent to the issues [raised in the case] and set out correct legal principles complete in themselves as far as they go with regard to the specific issues involved." *Castle v. Lester*, 272 Va. 591, 605 (2006). "It is axiomatic that a party is entitled to have jury instructions that address his or her theory of the case so long as that theory is supported *both by law and fact*." *Honsinger v. Egan*, 266 Va. 269, 274 (2003) (citing *Price v. Taylor*, 251 Va. 82, 85 (1996)). "[N]o instruction should be given . . . 'which would be confusing or misleading to the jury.'" *Graves v. Commonwealth*, 65 Va. App. 702, 708 (2016) (second alteration in original) (quoting *Mouberry v. Commonwealth*, 39 Va. App. 576, 582 (2003)). "A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" *Conley v. Commonwealth*, 74

---

[9] We do not consider the merits of the administrator's overarching argument that the trial court erred by permitting Dr. Highfill to reference the 2015 letter during his closing argument because that overarching argument is based on the administrator's position that the 2015 letter was either inadmissible or never admitted into evidence. *See Moore v. Joe*, 76 Va. App. 509, 517 n.2 (2023) (noting that the Court "must 'decide cases "on the best and narrowest grounds available"'" (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017))).

Va. App. 658, 674-75 (2022) (quoting *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019)). "We review a trial court's decisions in giving and denying requested jury instructions for abuse of discretion."[10] *Id.* at 675.

The administrator argues that the trial court erred by informing the jury that she was compensated for Curtis' death and by allowing Dr. Highfill to do the same during his opening statement and closing argument. She maintains that the trial court's "combined stipulation"[11] and corresponding jury instruction were "misleading and confusing to the jurors," irrelevant to the issue of punitive damages, and "created an unacceptable risk that the jury would take into account the compensatory damages award in reaching its determination on punitive damages." She notes that the trial court and Dr. Highfill collectively informed the jury of her compensatory damages award on five separate occasions and suggests that the jury "most likely" concluded that she was "already handsomely compensated" for Curtis' death and that "Dr. Highfill had already paid a high price for his wrongdoing."

Punitive damages "are not intended to compensate the plaintiff," but rather to "punish the defendant and to serve as an example to others from acting in a similar way." *Sidya v. World Telecom Exch. Commc'ns, LLC*, 301 Va. 31, 49 (2022) (quoting *LeBrun v. Yakeley*, 67 Va. Cir. 122,

---

[10] We note that the administrator does not contend that either the trial court's combined stipulation or its corresponding jury instruction failed to accurately state the relevant law.

[11] We first note that while both parties referred to the instruction read to the venire at the outset of this case as a "stipulation," they did not agree as to the specific language to be used, each submitted their own preferred version of the instruction, the trial court ultimately crafted its own version, taking elements from both proposed instructions, and the administrator noted her objection to the language used by the trial court. Therefore, this preliminary "stipulation" was not actually a formal stipulation, but instead, a jury instruction. A stipulation, by definition, must be agreed to by both parties. *See Stipulation*, *Black's Law Dictionary* (11th ed. 2019) (A stipulation is "[a] voluntary agreement between opposing parties concerning some relevant point; esp., an agreement relating to a proceeding, made by attorneys representing adverse parties to the proceeding."). By objecting to the trial court's chosen language, the stipulation was not agreed to, and therefore was instead an instruction from the court.

123 (Fairfax Cnty. Cir. Ct. 2005)).  Indeed, the administrator concedes that punitive damages would not compensate her as a beneficiary of Curtis' estate.  Moreover, the record suggests that the administrator recognized that there was a risk that the jury may inadvertently award punitive damages to compensate her absent an instruction by the trial court, as evidenced by her suggestion that the trial court instruct the jury that it "may not award any damages to compensate" her.  The administrator's suggested instruction, however, would leave the jury to question whether she had been compensated for her loss and risk that they would inadvertently attempt to compensate her.

Unlike the administrator's suggested instruction, the trial court's combined jury instruction[12] informed the jury that the administrator had been awarded compensatory damages and that her claim for such damages had been "fully resolved."  Contrary to the administrator's claim that the trial court's jury instruction "created an unacceptable risk that the jury would take into account the compensatory damages award in reaching its determination on punitive damages," they discouraged the jury from making an improper award of additional compensatory damages.  Moreover, the

_____

[12] At the close of the case, the trial court instructed the jury:

> Before this trial, the parties both presented evidence to a jury on January 29th, 30, 31 and February 5, 6, 2018.  At the conclusion of the trial on February 6, 2018, a jury determined that Dr. Highfill was negligent and his negligence was a proximate cause of Ms. Curtis' death.  The jury awarded a verdict in favor of the Plaintiff, which provides to the Plaintiff compensatory damages, which include any sorrow, mental anguish, and the loss of solace, including the society, companionship, comfort, guidance, kindly offices, and advice of the decedent, and any reasonably expected loss of services, protection, care, and assistance which the decedent provided to Plaintiff.  That verdict is not in dispute, and Plaintiff's claims for compensatory damages have been fully resolved.  The only issue for you to decide is whether punitive damages should be assessed, and, if so, in what amount.  Your verdict must be based on the facts as you find them and on the law contained in all of these instructions.  The sole issue in this case is: Was Dr. Highfill's conduct willful or wanton, or was his conduct so reckless as to evince a conscious disregard for the safety of others?

record demonstrates that the trial court offered the instruction only twice, first at the start of the three-day trial and then again on the third day of trial before the jury retired to deliberate. Similarly, Dr. Highfill made three brief references to the administrator's compensatory damages award during his opening statement and closing argument, each of which reminded the jury that compensatory damages were not at issue. Under the circumstances of this case, we conclude that the trial court did not abuse its discretion by reading the instruction to the jury or by allowing Dr. Highfill to reference the compensatory damage award during his opening and closing arguments.

CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed*.