# COURT OF APPEALS OF VIRGINIA

## Record No. 0070-25-2

JERMIA M. WORSHAM

v.

COMMONWEALTH OF VIRGINIA

Present: Chief Judge Decker, Judges Ortiz and Callins

Argued at Richmond, Virginia

Opinion Issued May 19, 2026[*]

## FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
M. Duncan Minton, Jr., Judge

Lauren E. Brice, Assistant Public Defender (Virginia Indigent Defense Commission, on briefs), for appellant.

Aaron J. Campbell, Senior Assistant Attorney General (Jason S. Miyares,[1] Attorney General, on brief), for appellee.

## MEMORANDUM OPINION BY
## CHIEF JUDGE MARLA GRAFF DECKER

Jermia Mario Worsham appeals his conviction of attempting to solicit sex from a minor in violation of Code §§ 18.2-26 and -346.01(i). Worsham argues that the evidence was insufficient to prove that he made an offer as required by the solicitation statute. He also suggests that even assuming he made an offer, it did not involve obtaining sex in exchange for money or its equivalent as directed by the statute. For the following reasons, the conviction is affirmed.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

BACKGROUND[2]

In March 2023, Detective Joanna Hartsook of the Chesterfield County Police Department and other members of the Department's Special Victims Unit began an online sting operation "to identify victims and suspects involved in human trafficking and prostitution." Detective Hartsook placed an advertisement on a particular website well-known for prostitution. The ad contained images of a female undercover officer that were modified to "look like someone who could potentially be underage." It stated the young woman was twenty years old, new to the Richmond area, and "[l]ooking to connect and make some paper." The ad listed various sexual acts that she "m[ight] enjoy" and mentioned "party favors," a term referring to drugs or alcohol used as payment. Finally, it included a phone number for making contact.

Worsham messaged the phone number in the ad. He inquired about the young woman's specific location and her preferred "party favors." Detective Anthony Diocedo, acting as the girl in the ad, messaged back that "she" "like[d] weed and white claw" but was "too yo[u]ng to buy it." Worsham asked how old she was and said that he had "party favors" but wanted "head" in return. Diocedo messaged him back, stating that "she" was seventeen but would be eighteen in a few months. Worsham expressed surprise and replied that he was "not trying to get in trouble." But instead of ending the exchange, he continued negotiating by asking if she would perform certain other sexual acts related to the requested fellatio. Detective Diocedo responded that "she" would

---

[2] When the sufficiency of the evidence is challenged on appeal, this Court reviews the evidence "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). This foundational principle requires the appellate court "to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn'" from that evidence. *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018) (per curiam)).

perform the requested sex acts for $60. Worsham texted that he had "party favors," and they arranged to meet at a hotel so they could "party."

Prior to Worsham's arrival, he called the advertiser's phone number in an effort to confirm she was "legit." He spoke to Detective Hartsook, who posed as the advertiser for purposes of voice contact. Hartsook asked if Worsham was "going to come play," and he said yes. When she asked if he had cash, Worsham repeated that he had "party favors" and would bring weed. Hartsook suggested they "smoke and have a little party." Worsham replied that "she" could smoke and then they could party "[be]cause [she] kn[e]w what [he] want[ed]." Prior to ending the call, Worsham asked her to send a photo of her genitals to prove she was "not [with the] police." Hartsook sent a nude photo "sourced" from the internet, and Worsham replied by sending a photo of marijuana. Worsham arrived at the motel, went to the room number provided, and was arrested at the scene.

At Worsham's jury trial, the officers involved in the sting operation testified. Detective Hartsook, who was qualified "as an expert in sex offense investigations[ and] the use of online chatting operations," testified about her role. She explained that she chose the particular website because it was well-known for online prostitution and minor victims had previously been identified on the site. Hartsook also defined terms used during her call with Worsham, stating that asking if he "want[ed] to come and play" was an invitation to "meet for one of the [sexual] activities described" in the ad. She elaborated that a reference to "party[ing] or party favors c[ould] indicate that [a person was] willing to pay [with] something other than cash, like alcohol or drugs." Detective Diocedo, also qualified as an expert in the investigation of sex offenses, testified about his role as an "online . . . chatting detective." He addressed the text messages that he and Worsham exchanged, including the sexual acts they discussed.

Following the Commonwealth's case, Worsham made a motion to strike the evidence. He argued it failed to prove that he engaged in "any sort of overt act toward making an offer" of

- 3 -

compensation for sex with a minor. The trial court denied the motion. Worsham did not present any evidence and renewed his motion to strike, which the trial court again denied. The jury convicted Worsham of attempting to solicit sex from a minor.

Worsham then made a motion to set aside the verdict. At a hearing on the motion, he reiterated his argument that he never "intended to make any offer" of compensation "for a sexual act." He also posited for the first time that the statutory language "money or its equivalent [wa]s ambiguous" and marijuana was not an equivalent of money. The trial court denied the motion, ruling that drugs could be the equivalent of money under the statute. Worsham was sentenced to five years of incarceration with four years suspended.

ANALYSIS

Worsham challenges the sufficiency of the evidence to prove he attempted to solicit sex from a minor. This Court's role in reviewing a challenge to "the sufficiency of the evidence underlying a criminal conviction" "is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "[W]e will affirm the judgment of the trial court unless that judgment is 'plainly wrong or without evidence to support it.'" *Raspberry v. Commonwealth*, 71 Va. App. 19, 29 (2019) (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 257 (2003) (en banc)). "[I]t is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion." *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (second and third alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)). Rather, "the relevant question [on appeal] is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Raspberry*, 71 Va. App. at 29 (quoting *Melick v. Commonwealth*, 69 Va. App. 122, 144 (2018)).

The evidence is "'considered as a whole'" and not "in isolation." *Barney*, 302 Va. at 97 (quoting *Stamper v. Commonwealth*, 220 Va. 260, 273 (1979)). "And '[w]hile no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances . . . may lead a reasonable mind irresistibly to a conclusion.'" *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017) (alterations in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)).

Worsham's conviction for the attempted solicitation of sex from a minor involves three statutes. Code § 18.2-346.01 provides that "[a]ny person who offers money or its equivalent to another [to] engag[e]" in certain sexual acts and "does any substantial act in furtherance thereof" commits the crime of solicitation. That statute defines the covered sexual acts by incorporating those in Code § 18.2-346, the prostitution statute. Where, as here, the person solicited is a minor "[sixteen] years of age or older," the act is a Class 6 felony. Code § 18.2-346.01(i).[3] Finally, Code § 18.2-26 provides that "every person who attempts to commit an offense that is a felony shall be punished" as for a Class 4, 5, or 6 felony, determined by the maximum sentence prescribed for the felony attempted.[4]

Worsham raises two specific challenges. He argues that the evidence failed to show he made an offer as required by the solicitation statute. He also contends that marijuana—described

---

[3] Until July 1, 2021, the crime proscribed in Code § 18.2-346.01 was instead contained in Code § 18.2-346(B). *See* 2021 Va. Acts Spec. Sess. I ch. 188. As of that date, the General Assembly removed subsection (B) from Code § 18.2-346 and created the new Code § 18.2-346.01 containing the same offense with the same punishment. *See id.* That punishment is heightened if the person solicited is a minor. *See* Code § 18.2-346.01.

[4] An attempt requires proof of the intent to commit a crime and a direct but ineffectual act toward its consummation. *See Secret v. Commonwealth*, 296 Va. 204, 228 (2018). We do not consider the interplay between attempt and solicitation of prostitution because we hold that the best and narrowest ground for decision involves examining only the issue as framed by Worsham. *See generally Commonwealth v. Holland*, 304 Va. 34, 49 (2025).

here as "party favors"—does not qualify as an equivalent of money, a necessary element of the offense.

"To the extent [a] sufficiency analysis involves issues of statutory construction, our appellate review [of the statute's meaning] is de novo." *Thornton v. Commonwealth*, 78 Va. App. 321, 328 (2023). "[C]riminal statutes are to be strictly construed against the Commonwealth[. But] appellate court[s] must also 'give reasonable effect to the words used' in the legislation." *Green v. Commonwealth*, 72 Va. App. 193, 202 (2020) (quoting *Johnson v. Commonwealth*, 37 Va. App. 634, 639 (2002)). And as to the statute itself, the reviewing court "assume[s] that the legislature chose, with care, the words it used when it enacted th[at] . . . statute." *Commonwealth v. Delaune*, 302 Va. 644, 655 (2023) (quoting *Supinger v. Stakes*, 255 Va. 198, 206 (1998)). If the language used "is unambiguous, [the Court is] bound by its plain meaning." *Taylor v. Commonwealth*, 298 Va. 336, 341 (2020) (quoting *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007)). If the "'statute's terms are undefined' by the legislature, the Court gives those terms 'their "ordinary meaning," in light of "the context in which [they are] used."'" *Green*, 72 Va. App. at 203 (alteration in original) (quoting *Va. Marine Res. Comm'n v. Chincoteague Inn*, 287 Va. 371, 384 (2014)). It is through this well-established legal lens that we view Worsham's sufficiency challenges.

I.  The Offer

Worsham contends that the Commonwealth's evidence failed to demonstrate that he ever made an "offer" for any sex act listed in Code § 18.2-346 as required to support his conviction for the offense. *See* Code § 18.2-346.01. He suggests the evidence showed, at most, merely that he *accepted* an offer made by the detectives posing as a young woman.

The General Assembly has not defined the term "offer" in the context of Code § 18.2-346.01, so courts use the "ordinary meaning" of the word. *See Durham v. Commonwealth*,

303 Va. 310, 323 (2024). To determine this meaning, "dictionary definitions and pertinent analysis in prior case law may be consulted." *Eley v. Commonwealth*, 70 Va. App. 158, 165 (2019). Relevant dictionary definitions of "offer," used as a transitive verb, are "[t]o present for acceptance or rejection," as to tender; "[t]o put forward for consideration," as to suggest; and "[t]o propose as payment," as to bid or offer a specific amount of money. *Offer*, *The American Heritage Dictionary of the English Language* (5th ed. 2011); *see Offer*, *Webster's Third New International Dictionary of the English Language* (1993).[5]

Contrary to Worsham's suggestion, the evidence supports the jury's conclusion that he offered to pay for sex acts as proscribed by the statute. The jury could have reached this conclusion in either of two different ways. *See generally Davison v. Commonwealth*, 69 Va. App. 321, 330-31 (2018) (holding that where an element of an offense can be proved by more than one set of underlying facts, it is irrelevant whether the jury is unanimous about the particular set of those facts upon which it relies), *aff'd per curiam*, 298 Va. 177, 179 (2019).

First, the evidence established that Worsham made a straightforward offer. He contacted the phone number provided in an ad for sex acts. Shortly after he began messaging the person he believed to be a young woman, Worsham initiated the discussion of sexual activities. He specifically texted her that he had "party favors" and wanted "head" in exchange. Expert testimony explained that "party favors" are things "like alcohol or drugs" used in lieu of a cash payment. Soon after Worsham sent this message, Detective Diocedo, playing the role of the young woman, texted back that she was a minor. Despite expressing surprise about the girl's age, Worsham did not rescind his initial offer and proceeded with negotiations by asking about an additional sex act. She

---

[5] This Court relied on these same definitions to determine the meaning of "offer" as used in Code § 18.2-346.01 in *Artis v. Commonwealth*, No. 1703-23-2, slip op. at 10-11, 2024 Va. App. LEXIS 636, at *14-15 (Nov. 6, 2024), which is cited by the parties. Unpublished opinions of this Court have no precedential value but may be instructive. *See, e.g.*, *Otey v. Commonwealth*, 61 Va. App. 346, 350 n.3 (2012).

told him that the additional sexual activity would cost "extra" and quoted him a price of $60.  In response, Worsham countered that he had party favors, indicating his intent to pay, just using a different medium of exchange.  The undercover officer accepted his offer by responding "cool" and "let[']s party."[6]  The evidence therefore establishes that he made an offer for a proscribed sex act as required to prove a violation of Code § 18.2-346.01.

Second, the jury could have viewed Worsham's negotiations subsequent to his original offer as a counteroffer that itself qualified as an offer under the statute.  *See Counteroffer*, *Black's Law Dictionary* (12th ed. 2024) (defining the term in part as a "new offer").  Under basic contract principles, for an agreement to be established, there can be "no material variance between the acceptance and the offer."  *Chittum v. Potter*, 216 Va. 463, 468 (1975).  Any variance of the terms in "[a] proposal to accept" an offer "is a rejection of th[at] offer and puts an end to the negotiations, unless the party who made the original offer . . . assents to the modification suggested."  *Richeson v. Wilson*, 187 Va. 536, 546 (1948).  In the instant case, the advertiser told Worsham that she would charge him $60 to perform the requested sexual act.  Worsham sought to modify the terms, which the jury could have viewed as a rejection of the initial offer.  He did so by stating that instead of money, he had "party favors," indicating his intent to pay with something like drugs or alcohol.[7]  Based on these principles, the jury could reasonably have found that Worsham's statement that he

[6] To the extent that Worsham suggests the messages prior to disclosure of the girl's age should not be considered, this Court held in an analogous situation that "rational fact-finder[s] could find that [the appellant] was engaged in . . . *ongoing* negotiation[s] about the terms" of the agreement.  *See Thornton*, 78 Va. App. at 332-33 (emphasis added).  Although Worsham began the negotiations with his offer to provide party favors in exchange for fellatio before learning the girl was seventeen, he did not withdraw from the negotiations upon learning her age.  Instead, he discussed specific details about what he wanted from the encounter before they reached an agreement for Worsham to receive fellatio in exchange for party favors.  All the messages were in evidence for the jury's consideration, and a reasonable jury could have found that Worsham was engaged in ongoing negotiations.

[7] While Code § 18.2-346.01 does not require that an agreement be reached, here the undercover officer assented to the new terms proposed by Worsham.

would provide party favors in lieu of the $60 was a counteroffer satisfying the statute's requirements. This conclusion is supported by the texts that followed, which solidified the location for the rendezvous.

While the initial message thread was likely integral to the jury's decision, significant additional dialogue between Worsham and the young woman supported the conclusion that the two reached an agreement based on Worsham's offer. In a later text, Worsham asked if he needed to bring anything with him. Diocedo, posing as the girl, responded that he did not but sought confirmation that he had the "party favors." Worsham messaged that he did and asked if she wanted "weed." During a phone call about twenty minutes later, Detective Hartsook asked if Worsham had "cash." Worsham responded, "Nah. I told you I got . . . party favors."[8] Hartsook and Worsham then discussed the type of party favors and the sexual activities to be conducted. And at least three more text messages between Worsham and the undercover detective confirmed that Worsham would bring marijuana as payment. These interactions permitted a reasonable juror to determine that the parties reached an agreement based on Worsham's initial offer or counteroffer to pay for the sexual act with "party favors."

In any event, the evidence was sufficient to support the jury's conclusion that Worsham made an offer as required to support his conviction of attempted solicitation of a minor.

## II. Money or Its Equivalent

Worsham contends that his mention of party favors and marijuana did not satisfy the element of Code § 18.2-346.01 requiring an offer of "money or its equivalent." He posits that an "'equivalent' of money means some sort of cash, coin, or other financial token." Based on this

---

[8] Hartsook pretended to recall the agreement with Worsham, necessary because Diocedo was the one who had negotiated it.

definition, he argues that offering to provide marijuana does not satisfy the statute's requirement and, as such, the evidence was insufficient to prove he attempted to solicit a minor.[9]

In a jury trial, questions of law are the responsibility of the trial court to resolve, while juries decide questions of fact. *See Amonett v. Commonwealth*, 70 Va. App. 1, 8 (2019). Instructions are provided to the jurors "to fully and fairly inform the[m] as to the law of the case applicable to the particular facts." *Commonwealth v. Kartozia*, 304 Va. 321, 332 (2025) (quoting *Honsinger v. Egan*, 266 Va. 269, 274 (2003)). The jury then applies that law to determine whether the evidence proves a violation of the statute. *See Sarafin v. Commonwealth*, 288 Va. 320, 325 (2014).

It is well-established that jury "instructions given without objection become the law of the case and thereby bind the parties in the trial court and th[e appellate c]ourt[s] on review." *Smith v. Commonwealth*, 296 Va. 450, 461 (2018) (quoting *Wintergreen Partners, Inc. v. McGuireWoods, LLP*, 280 Va. 374, 379 (2010)). This principle applies even if an instruction contains an "intrinsic legal error." *Barney*, 302 Va. at 93. A closely related principle is that "when an issue has been submitted to a jury under instructions given without objection, such assent constitutes a waiver of any contention that the trial court erred in failing to rule as a matter of law on the issue." *Holles v. Sunrise Terrace*, 257 Va. 131, 137-38 (1999).

Interpreting the meaning of "money or its equivalent" as used in Code § 18.2-346.01 and the related jury instruction are questions of law. *See Thornton*, 78 Va. App. at 328. Worsham did not object to the language used in the relevant instruction *before* it was given. He also failed to propose or request an additional instruction defining or clarifying the now-contested phrase, "or its equivalent," for the jury. He first raised the issue of what constitutes the equivalent of money in his

---

[9] We assume without deciding that this argument is not barred by a failure to comply with Rule 5A:20(c). *See McGinnis v. Commonwealth*, 296 Va. 489, 501 (2018) (stating that appellate courts "may 'assume without deciding' that [an] issue can be reviewed provided that [it] permits [the courts] to resolve the appeal on the best and narrowest ground[]").

motion to set aside the verdict. Under law-of-the-case principles, Worsham waived any argument about how that statutory language should be interpreted by waiting to raise it until after the case had been submitted to and decided by the jury.[10] *See Smith*, 296 Va. at 461-62; *Holles*, 257 Va. at 137-38. We therefore examine the sufficiency of the evidence on this point in light of the instruction provided.[11]

The jury was instructed that the Commonwealth had to prove "the defendant intended to commit solicitation of a minor," defined in part "as offering *money or its equivalent* to a minor." (Emphasis added). Accordingly, we turn to the meaning of the term "equivalent." Under its common dictionary definition, "equivalent" means "equal in force or amount," "equal in value," or "corresponding . . . in effect or function." *Equivalent*, *Webster's*, *supra*; *see also Equivalent*, *The American Heritage Dictionary*, *supra* (defining the term as "[h]aving similar or identical effects" or being "essentially equal to" something else). In applying this instruction, the jurors were allowed to

---

[10] Even though the Commonwealth did not raise the law-of-the-case doctrine as a ground on which to affirm the trial court, this Court can apply it. *See generally Durham*, 303 Va. at 322 n.2 (allowing appellate courts to invoke the contemporaneous-objection procedural bar against an appellant in their discretion, regardless of whether the appellee raised it); *Commonwealth v. Moncrea*, ___ Va. ___, ___ n.4 (Apr. 2, 2026) (rejecting the parties' attempted joint legal concession and deciding the case on other grounds); *Logan v. Commonwealth*, 47 Va. App. 168, 172 n.4 (2005) (en banc) ("[A]ppellate court[s] cannot vacate a criminal conviction that violates no recognizable legal principle simply on the ground that the prosecutor . . . did not articulate the proper legal basis for it." (quoting *Blackman v. Commonwealth*, 45 Va. App. 633, 642 (2005))).

[11] It is true that "when a principle of law is vital to a defendant in a criminal case, [the] trial court has an affirmative duty properly to instruct [the] jury about the matter." *Jimenez v. Commonwealth*, 241 Va. 244, 250 (1991), *quoted in King v. Commonwealth*, 64 Va. App. 580, 592 (2015) (en banc). But this duty applies only when either (1) the defendant proffers a flawed instruction on the principle or (2) the trial court fails to instruct the jury on an essential element of the offense and the record contains no evidence on that element. *See id.* at 250-51. In this case, the jury was instructed on the "money or its equivalent" element of the offense. Additionally, Worsham neither asked the trial court to define the phrase, "or its equivalent," for the jury nor timely argued that the evidence failed to prove it. Because this claimed error relates merely to the definition of an included element rather than the omission of an essential one, the trial court had no affirmative duty to act. And Worsham's post-verdict challenge came too late to alter the legal framework applicable to this appeal.

"use . . . their reason and common sense, and the knowledge and experience gained by them in everyday life." *Person v. Commonwealth*, 60 Va. App. 549, 555 (2012) (quoting Charles E. Friend, *The Law of Evidence in Virginia* § 19-20 (6th ed. 2003)); *see Cuffee v. Commonwealth*, ___ Va. ___, ___ (Apr. 16, 2026) ("[A] jury is free to apply its common sense to the evidence and the inferences [from that evidence].").  In other words, the jury could conclude that the texting and oral dialogue, taken as a whole, reflected that "party favors" were the "equivalent" of "money" for the sexual services.  The jury found Worsham guilty by applying this instruction on the elements of the offense, and the record supports its decision.

CONCLUSION

On this record, the evidence was sufficient to prove that Worsham made an offer soliciting a minor.  Further, Worsham waived his challenge to the meaning of "equivalent" by not presenting it to the trial court before the issue was submitted to the jury.  And the evidence supported the jury's finding that Worsham made an offer of party favors—an "equivalent" of money under the dictionary definition—in exchange for one of the sexual acts listed in the statute.  Accordingly, his conviction for attempted solicitation of sex from a minor is affirmed.

*Affirmed.*